**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-383 |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**</u>
<u>**FOR A PRELIMINARY INJUNCTION**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................ 4

     I.     THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF. ........................................................................................................... 5

     II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION. .................................................................................................. 5

          A.     American Oversight Is Likely to Succeed on the Merits ................................... 6

          B.     American Oversight Will Be Irreparably Harmed Absent the Requested Relief. ........................................................................................................................ 9

          C.     The Requested Relief Will Not Burden Others' Interests. ............................... 12

          D.     The Public Interest Favors the Requested Relief. ............................................ 13

CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**(s)

**Cases**

*Al-Fayed v. CIA,*
   254 F.3d 300 (D.C. Cir. 2001) ............................................................................... 6
*Am. Oversight v. U.S. Dep't of Just.,*
   No. 24-cv-02789-PLF (D.D.C. Oct. 22, 2024) ..........................................7-8, 10-11
*\*Am. Oversight v. U.S. Dep't of State,*
   414 F. Supp. 3d 182 (D.D.C. 2019) ................................................................... 6, 12
*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n,*
   711 F.3d 180 (D.C. Cir. 2013) ............................................................................ 6, 7
*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury,*
   49 F. Supp. 2d 3 (D.D.C. 1999) ............................................................................ 14
*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
   286 F. Supp. 3d 96 (D.D.C. 2017) ........................................................................ 11
*Elec. Frontier Found. v. Office of Dir. of Nat'l Intel.,*
   No. C 07-5278 SI, 2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) ......................... 11
*\*Elec. Priv. Info. Ctr. v. Dep't of Justice,*
   416 F. Supp. 2d 30 (D.D.C. 2006) ..................................................................... 8, 12
*Jacksonville Port Auth. v. Adams,*
   556 F.2d 52 (D.C. Cir. 1977) ............................................................................13-14
*Leadership Conf. on Civil Rights v. Gonzales,*
   404 F. Supp. 2d 246 (D.D.C. 2005) ................................................................... 8, 12
*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.,*
   437 U.S. 214 (1978) .........................................................................................9-10, 14
*Oglesby v. Dep't of the Army,*
   920 F.2d 57 (D.C. Cir. 1990) ................................................................................. 5
*Payne Enters., Inc. v. United States,*
   837 F.2d 486 (D.C. Cir. 1988) ............................................................................... 9
*Protect Democracy Project, Inc. v. U.S. Dep't of Def.,*
   263 F. Supp. 3d 293 (D.D.C. 2017) ...................................................................... 11
*Serono Labs., Inc. v. Shalala,*
   158 F.3d 1313 (D.C. Cir. 1998) ............................................................................. 6
*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
   489 U.S. 749 (1989) .............................................................................................. 14
*U.S. Dep't of Justice v. Tax Analysts,*
   492 U.S. 136 (1989) ............................................................................................... 7
*\*Wash. Post v. Dep't of Homeland Sec.,*
   459 F. Supp. 2d 61 (D.D.C. 2006) ................................................................ passim

**Statutes**

5 U.S.C. § 552 ...................................................................................................... passim

**Regulations**

28 C.F.R. § 600.8(c)..................................................................................................... 7

**Other Authorities**

H.R. Rep. No. 93-876 (1974)..................................................................................... 5, 11

Ivan Pereira, Allison Pecorin, & Isabella Murray, *Committee Vote on Kash Patel's Nomination to be FBI Director Delayed After Democrats Object*, ABC News (Feb. 6, 2025), https://abcnews.go.com/Politics/committee-vote-kash-patels-nomination-fbi-director-delayed/story?id=118527085 ........................................................................................ 4

Letter from House Judiciary Committee to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 15, 2025), https://democrats-judiciary.house.gov/uploadedfiles/2025-01-15_hjc_dems_to_garland_doj.pdf........................................................................... 3

## INTRODUCTION

American Oversight seeks a preliminary injunction ordering the U.S. Department of Justice to release the non-exempt portions of former Special Counsel Jack Smith's investigative report into allegations of President Trump's mishandling of classified documents. The requested report, which has already been redacted by Smith, is urgently needed to inform the public of the activities of Kash Patel, whose nomination as FBI Director is currently before the U.S. Senate.

On January 7, 2025, then Special Counsel Jack Smith delivered to Defendant U.S. Department of Justice ("DOJ") the two-volume report on his investigations into President Trump's potential interference with the lawful transfer of power following the 2020 election and allegations of mishandling a trove of classified documents after Trump left office in 2021. The following day, American Oversight sent DOJ a request for expedited production of both volumes of the Special Counsel's report. In mid-January, DOJ publicly released Volume One of the report, concerning President Trump's alleged election interference; however, DOJ has failed to respond to American Oversight's expedited processing request, continues to withhold Volume Two of the report, and has failed to provide a determination as to which records it will produce or withhold.

Immediate disclosure of the non-exempt portions of the report is urgent for American Oversight and the public because the report is expected to shed light on the actions of Kash Patel, President Trump's nominee to head the nation's principal law enforcement agency. American Oversight requested expedited processing, but DOJ has not responded by granting or denying that request. Meanwhile, the Senate Judiciary Committee is currently scheduled to vote on Patel's nomination on Thursday, February 13, and, depending on the outcome of that vote, a full Senate floor vote could follow soon thereafter.

By failing to respond to American Oversight's FOIA request or request for expedited processing, Defendant DOJ has abrogated the clear statutory directive requiring it to issue prompt

1

determinations regarding American Oversight's request for expedited processing as well as its request for records. DOJ's failure to meet its statutory obligations under FOIA deprives American Oversight of information it needs to educate the public about Patel's truthfulness, trustworthiness, and regard for the protection of classified information ahead of the Senate Judiciary Committee's vote to confirm him as Director of the FBI. American Oversight seeks immediate injunctive relief to protect its vital interests and those of the public it serves.

## Background

On January 7, 2025, then Special Counsel Jack Smith delivered to DOJ the two-volume report on his investigations into President Trump's potential interference with the lawful transfer of power following the 2020 election (Volume One) and allegations of mishandling of a trove of classified documents after Trump left office in 2021 (Volume Two). *See* Compl. ¶ 8. Smith provided DOJ with a redacted version of Volume Two that identified information which, at that time, might have been restricted from public disclosure by Federal Rule of Criminal Procedure 6(e). *Id*. ¶ 9.

The next day, American Oversight submitted a FOIA request to DOJ bearing internal tracking number DOJ-25-0036, seeking expedited production of both volumes of the Special Counsel's report. *Id*. ¶ 10, Ex. 1; *see* Decl. of Elizabeth Haddix ¶ 5 (Feb. 9, 2025).

On January 14, 2025, DOJ acknowledged its receipt of American Oversight's request and assigned it DOJ tracking number FOIA-2025-01746; however, to date, DOJ has not responded to American Oversight's request to expedite processing, nor provided American Oversight any responsive records nor determination concerning the request for records. Compl. ¶¶ 13-15, Ex. 2; Haddix Decl. ¶¶ 6-9.

On the same day, DOJ publicly released Volume One of the Special Counsel's report. Compl. ¶ 16. But DOJ withheld Volume Two from public release pending resolution of the

criminal charges against Walt Nauta, an aide to President Trump, and Carlos De Oliveira, property manager of President Trump's Mar-a-Lago estate, concerning their role in Trump's alleged mishandling of classified documents. *Id.* ¶ 17.

The next day, January 15, 2025, House Judiciary Committee members wrote to then-Attorney General Merrick Garland that Volume Two "presumably not only outlines the evidence supporting the 40 felony counts against Mr. Trump related to willfully hiding and mishandling extremely sensitive national defense information, but also explains *why* President-elect Trump retained and concealed classified documents and *what* he intended to do with those materials, neither of which was included in the indictment. It is essential that the American people and Congress understand how Mr. Trump mishandled our nation's most sensitive classified information, especially because he will be sworn in as Commander-in-Chief and take leadership of our national security apparatus in just five days." *Id.* ¶ 24 (citing Letter from House Judiciary Committee to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 15, 2025), https://democrats-judiciary.house.gov/uploadedfiles/2025-01-15_hjc_dems_to_garland_doj.pdf (emphasis in original)).

On January 29, DOJ moved to dismiss the criminal charges against Nauta and Oliveira and dismissed its appeal of the classified documents case, thereby eliminating justification for the continued withholding, in full, of Volume Two. *Id.* ¶¶ 18-19. On the same day, Senate Judiciary Committee Ranking Member Senator Dick Durbin, along with other Committee members, sent a letter to Acting Attorney General James R. McHenry III asking him to release Volume Two because of the Committee's need for "urgent access to materials that . . . bear directly on Mr. Patel's suitability to lead the nation's premier law enforcement agency," noting that the "Committee cannot adequately fulfill its constitutional duty without reviewing details in

the report of Mr. Patel's testimony under oath, which is necessary to evaluate Mr. Patel's truthfulness, trustworthiness, and regard for the protection of classified information." Compl. ¶ 24, Ex. 3.

On January 30, in his confirmation hearing before the Senate Judiciary Committee, Mr. Patel refused to disclose information pertaining to the classified documents case, including his grand jury testimony, prompting the Committee to delay their vote until Thursday, February 13, 2025.[1] Compl. ¶ 27.

DOJ's continued refusal to provide American Oversight with a copy of Volume Two and indexes justifying any withholding under claim of exemption prevents American Oversight from fulfilling its mission of providing the public with critical information concerning Mr. Patel's fitness to lead the nation's principal law enforcement agency.

**ARGUMENT**

American Oversight is entitled to preliminary injunctive relief in this case, which involves an expedited request for a discrete document that has already been processed and redacted, and has the potential to inform American Oversight and the American public about potentially significant misconduct by the current nominee to lead the FBI. Those records, consisting of Volume Two of the Special Counsel's report on President Trump's alleged mishandling of classified documents, can and should be immediately produced ahead of any Senate vote to confirm Mr. Patel's nomination. Given American Oversight's entitlement to the non-exempt portions of the requested records, its likelihood of success on the merits of its claims that DOJ has violated FOIA, the urgent need to inform the public about the information and evidence in Volume

---

[1] Ivan Pereira, Allison Pecorin, & Isabella Murray, *Committee Vote on Kash Patel's Nomination to be FBI Director Delayed After Democrats Object*, ABC NEWS (Feb. 6, 2025) https://abcnews.go.com/Politics/committee-vote-kash-patels-nomination-fbi-director-delayed/story?id=118527085.

Two, the irreparable harm to American Oversight resulting from DOJ's continued FOIA violation, and the likely benefit to the public and other FOIA requesters that will result from the relief American Oversight seeks, this Court should prevent irreparable harm to American Oversight and the public and order DOJ to comply with its statutory obligations in this matter of urgent national concern by immediately releasing the non-exempt portions of Volume Two.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit provisions in the FOIA statute, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request." *Id.* § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). This includes a failure to respond to a FOIA request within the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("[F]ailure to process FOIA requests in a timely fashion is 'tantamount to denial.'") (quoting H.R. REP. NO. 93-876, at 6 (1974)). American Oversight has therefore exhausted all applicable administrative remedies, and its claims are ripe for adjudication.

## II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the

plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 185 (D.D.C. 2019). Here, all four factors demonstrate American Oversight's entitlement to preliminary injunctive relief.

### A. American Oversight Is Likely to Succeed on the Merits

FOIA required DOJ to provide American Oversight a prompt determination on its FOIA request and the timely processing and production of non-exempt responsive records within twenty working days—a deadline that passed on February 6, 2025. FOIA clearly and unambiguously provides that federal agencies must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A). *See also id.* § 552(a)(6)(A)(i) (requiring a determination be communicated to a FOIA requester as to the scope of the records that will be produced and/or withheld, and the reasons for any withholdings, within 20 working days); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("Section 552(a)(6)(A)(i) must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future. Rather, in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."). American Oversight is also entitled to expedited processing of its request. § 552(a)(6)(E).

DOJ has failed to meet these clear statutory obligations here. First, DOJ has failed to respond to the FOIA request within the statutory deadline. The record at issue—a report created by a Special Counsel operating under DOJ's aegis and delivered to DOJ pursuant to DOJ regulation, 28 C.F.R. § 600.8(c)—is an "agency record" under FOIA. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 146 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the request reasonably describes the records sought and complied with all necessary procedures; in fact, it sought a discrete document that DOJ had redacted as of at least January 7, 2025. *See* Compl. ¶¶ 8 -11, Ex. 1.

Despite the urgent public need for the information contained in the single document American Oversight has requested, DOJ has failed to comply with its obligations to timely make a determination as to the scope of the records it intends to produce or withhold and the reasons for any withholdings. *See* 5 U.S.C. § 552(a)(6)(A)(i); *CREW*, 711 F.3d at 182–83 ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents."). American Oversight will therefore certainly succeed in establishing its entitlement to the non-exempt portions of Volume Two.

Second, American Oversight is entitled to expedited processing of its request, as there is a compelling need to inform the public concerning the information and evidence contained in Volume Two ahead of the Senate's imminent votes to confirm Mr. Patel as head of the FBI. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); Compl. ¶¶ 12, 20-22. DOJ's statutory deadline for notifying American Oversight of its determination regarding the request for expedited processing expired on January 22, 2025. *See* 5 U.S.C. § 552(a)(6)(E)(i)(I). American Oversight's mission is to

7

promote accountability in government through transparency, and it is primarily engaged in disseminating information to the public. Compl. ¶ 5, Ex. 1 at n.14 (citing Transcript of Oral Argument, *Am. Oversight v. U.S. Dep't of Just.*, No. 24-cv-02789-PLF (D.D.C. Oct. 21, 2024) (finding that American Oversight is an organization primarily engaged in disseminating information)); Haddix Decl. ¶¶ 10-11. Accordingly, upon receipt of Volume Two, American Oversight will promptly publicize it for consideration by the general public and the U.S. Senate. Compl. ¶ 29; Haddix Decl. ¶ 11.

Courts have found that expedited processing is warranted in cases where the records were needed far less urgently, and concerned matters far less momentous, than a president's alleged mishandling of classified documents and his nominee's related actions and conduct before a congressional vote to confirm that nominee as head of the FBI. *See, e.g., Elec. Priv. Info. Ctr. v. Dep't of Just. ("EPIC"),* 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (finding expedited processing warranted where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conf. on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding expedited processing warranted where records requested concerned legislation that was set to expire over a year from the time of the court's decision).

Thus, American Oversight will ultimately prevail in demonstrating its entitlement to expedited processing of its FOIA request, prompt determinations on its request, and prompt disclosure of non-exempt responsive records. Besides DOJ's clear statutory obligations, there is significant public and congressional interest in Volume Two, pertaining both to President Trump's alleged mishandling of the classified documents and Mr. Patel's related conduct and actions demonstrating his truthfulness, trustworthiness and regard for protecting classified information. In

addition, congressional interest in Volume Two is extraordinary, as demonstrated by the Senate Judiciary Committee's delay of its vote to confirm Mr. Patel to lead the nation's principal law enforcement agency. Given American Oversight's (and the public's) urgent need for the requested information, expedited processing is necessary.

### B. American Oversight Will Be Irreparably Harmed Absent the Requested Relief.

American Oversight will be harmed irreparably if DOJ does not grant expedited processing, promptly process American Oversight's FOIA request, and promptly produce non-exempt responsive records. Only preliminary injunctive relief can address this urgent need and the specter of irretrievably losing American Oversight's rights under FOIA. As the D.C. Circuit has noted, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). The Senate's advice and consent regarding the nominee to lead the nation's most powerful law enforcement agency—the very agency that initiated the investigation described in Volume Two—hangs in the balance. Further unlawful delay in processing the request will irreparably harm American Oversight's ability to receive the determinations and prompt production of materials in time to carry out its core mission of informing the public of matters of great importance related to President Trump and, urgently, the person he has chosen to lead the FBI. Only accelerated review by this Court can ensure that DOJ's failure to comply with its statutory obligations does not irrevocably harm American Oversight. *See Wash. Post*, 459 F. Supp. at 66 ("[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request.").

American Oversight's purpose is to use FOIA to help it, and the public, monitor the activities of government officials and agencies. Compl. ¶ 29; Haddix Decl. ¶ 10. Prompt determinations and timely production of non-exempt records equip American Oversight to

enhance the public debate on the merits of the classified documents allegations and investigation of the same. Compl. ¶ 21; Haddix Decl. ¶ 11; *see generally Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").

Here, DOJ's refusal to produce the requested record is particularly damaging to American Oversight's mission, and to public debate, in the lead-up to a pivotal confirmation vote. As time passes, the value of the requested information will greatly diminish—particularly if Mr. Patel is confirmed. In light of the Senate's impending vote on Mr. Patel's confirmation, as well as House and Senate members' repeated demands that the DOJ release Volume Two, there is an urgent need to inform the public—now—about the information and evidence contained in the records American Oversight seeks.

This case presents even greater urgency than the Court found in *Washington Post v. Department of Homeland Security*, where the plaintiff sought visitor logs for the Vice President's office and residence which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* This Court concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75; *see also* Transcript of Oral Argument at 36-47, *Am. Oversight v. U.S. Dep't of Just.*, No. 24-cv-02789-PLF (D.D.C.

Oct. 21, 2024), ECF No. 21 (granting a preliminary injunction, ordering expedited processing of the FOIA request, and requiring defendants to produce non-exempt portions of a single record after finding the public had an urgent need to know about an alleged incident at Arlington National Cemetery involving a presidential candidate within two weeks of a presidential election).

Here, too, American Oversight's request seeks records that are the subject of major current national debate. A committee vote on Mr. Patel's confirmation is less than a week away, with a potential Senate floor vote soon thereafter. American Oversight and the general public are entitled to receive an agency record that may pertain to Mr. Patel's truthfulness and track record on enforcing the law *before* a final Senate confirmation vote.

Because of the Senate's fast-moving timeline, the harm from further DOJ delay would be irreparable. Here, the intense public and congressional interest presents the type of "potential for irreparable harm" that courts find in FOIA cases where the requested documents concern "'ongoing public and congressional debates about issues of vital national importance [that] cannot be restarted or wound back.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (Cooper, J.) (quoting *Elec. Frontier Found. v. Office of Dir. of Nat'l Intel.*, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007)); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate."). Thus, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. REP. NO. 93-876, at 6 (1974)).

That is why courts in this jurisdiction have repeatedly issued preliminary injunctions in FOIA cases where the requester seeks information urgently needed to inform a pending or

developing situation. *See, e.g.*, *id.* at 74–75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *Am. Oversight*, 414 F. Supp. 3d at 187 ("The likely irreparable harm to American Oversight also stems from the fact that, if non-exempt responsive records exist, the public may not otherwise have access to them."); *EPIC*, 416 F. Supp. 2d at 40–41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conf. on Civil Rights*, 404 F. Supp. 2d at 260 (finding urgency requirement for expedition satisfied based on "upcoming expiration of the special provisions of the Voting Rights Act" more than one year later).

Here, American Oversight's ability to inform the public about the federal government's actions in matters addressed in Volume Two will be irreparably harmed if DOJ is not required to make timely determinations, promptly process American Oversight's FOIA request on an expedited basis and produce all non-exempt, responsive documents on an accelerated schedule.

### C.  The Requested Relief Will Not Burden Others' Interests.

No other interests would be harmed by granting American Oversight its requested relief. Defendant cannot claim to be harmed by an order compelling it to comply with its statutory obligations. Nor would granting American Oversight's relief unduly burden other FOIA requesters—especially since Volume Two has already been processed and redacted and can be immediately produced. Congress added the expedited processing provision to FOIA precisely to ensure that agencies make the statutorily required determination and promptly process the requested records upon a showing that the requested information is urgently needed to inform the public about an actual or alleged federal government activity. 5 U.S.C § 552(a)(6)(E)(v)(II); *see EPIC*, 416 F. Supp. 2d at 40 (explaining 1996 amendment adding expedited processing requirements to FOIA). The extraordinary importance of the record at issue, and the public's time-

sensitive need for the information, confirm that American Oversight's request is of the type Congress envisioned being processed ahead of other FOIA requests, and ordering DOJ to process it as such will not harm the interests of DOJ or anyone else.

Moreover, American Oversight submitted this request to DOJ over a month ago and the statutory deadline for providing determinations and responses has already passed. To the extent Defendant argues that resources will have to be pulled away from processing the requests of other requestors, that is due to Defendant's failure to allocate sufficient resources and make necessary systematic changes to process FOIA requests in compliance with its statutory obligations. Additionally, other FOIA requestors are seeking the records that American Oversight first requested. *See* Compl. ¶ 22. Ordering Defendants to rapidly search for, process, and produce records responsive to American Oversight's request will actually *aid* other FOIA requesters who have sought Volume Two.

### D.  The Public Interest Favors the Requested Relief.

A preliminary injunction is indispensable to protect the public's right to government transparency and essential interest in being informed about whether and to what extent President Trump and other federal officials, including Kash Patel, violated their legal obligations with respect to classified information. Additionally, Volume Two may contain further information that could shed light on Mr. Patel's fitness to serve as FBI Director, including his truthfulness in testifying to Congress. That is why multiple U.S. Senators have requested that DOJ disclose Volume Two. Compl. ¶¶ 23-25.  Consequently, the requested relief serves the public interest because disclosure will aid both Congress and the public to better participate in the ongoing public debate about the alleged mishandling of classified documents and make informed decisions while they still have the opportunity to do so.

Even in less urgent circumstances, "there is an overriding public interest . . . in the general

importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F. Supp. 2d at 76. FOIA is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) (noting that "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities).

Here, where a prosecutor's investigative report may contain information crucial to inform the public about potential misconduct by the nominee for FBI Director, the public interest in informed debate is at its peak. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). A preliminary injunction ensuring timely processing and disclosure of Volume Two is crucial to serving the public's interest.

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court grant a preliminary injunction requiring Defendant to make timely determinations on American Oversight's FOIA request, promptly process the request on an expedited basis, and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by 10:00am Eastern time on February 21, 2025, or such other date as the Court deems appropriate.

Dated: February 10, 2025                    Respectfully submitted,

                                            */s/ Elizabeth Haddix*
                                            Elizabeth Haddix

D.C. Bar No. 90019750
Daniel Martinez
D.C. Bar No. 90025922
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5246
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*