**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-383 (TJK) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

RELEVANT HISTORY ...................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    I.     American Oversight's Motion Is Not Moot .......................................................... 4

         A.    DOJ has not provided a FOIA-compliant determination regarding American Oversight's request. ......................................................................... 4

         B.    Defendant's failure to determine which exemptions apply and provide a complete response is unsupported by controlling law ..................................... 5

         C.    The "intended effect" of Judge Cannon's order was to protect the rights of the criminal defendants, and because that purpose has expired, it cannot supersede this Court's authority and Plaintiff's rights under FOIA. ................................... 6

         D.    Judge Cannon lacks authority to fully and indefinitely bar DOJ's release of non-exempt records to which American Oversight and the public are entitled under FOIA. ................................................................................................. 10

    II.    All Four Preliminary Injunction Factors Demonstrate American Oversight's Entitlement to Preliminary Injunctive Relief. ..................................................... 12

         A.    American Oversight has demonstrated irreparable harm..................................... 12

         B.    American Oversight has demonstrated likelihood of success on the merits......... 13

         C.    The balance of equities and public interest favor granting the requested relief. .. 14

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Boehm v. F.B.I.,*
  983 F. Supp. 2d 154 (D.D.C. 2013)........................................................10-11

*Chambers v. NASCO, Inc.*
  501 U.S. 32 (1991) ........................................................................... 10

*Children's Health Def. v. Ctrs. For Disease Control & Prev,*
  Civ. A. No. 23-431 (TNM), 2024 WL 3521593 (D.D.C. July 24, 2024)................. 14

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n,*
  711 F.3d 180 (D.C. Cir. 2013).......................................................... 4, 13

*Dep't of Air Force v. Rose,*
  425 U.S. 352 (1965) ............................................................................. 8

*Elec. Priv. Info. Ctr. v. Dep't of Just.,*
  416 F. Supp. 2d 30 (D.D.C. 2006)........................................................ 13

*Elrod v. Burns,*
  427 U.S. 347 (1976) ......................................................................... 15

*Gannett Co. v DePasquale,*
  443 U.S. 368 (1979) ......................................................................... 10

*GTE Sylvania, Inc. v. Consumers Union,*
  445 U.S. 375 (1980) ................................................................... passim

*Lopez v. United States,*
  373 U.S. 427 (1963) ......................................................................... 10

*Maydak v. U.S. Dep't of Just.*
  218 F.3d 760 (D.C. Cir. 2000).............................................................. 5

*Morgan v. U.S. Dep't of Just.,*
  923 F.2d 195 (D.C. Cir. 1991)....................................................... passim

*Muttitt v. Dep't of State,*
  926 F. Supp. 2d 284, 293 (D.D.C. 2013)) ................................................. 4

*Power the Future v. U.S. Dep't of State,*
  No. CV 24-346 (RC), 2025 WL 343175 (D.D.C. Jan. 30, 2025)....................... 4

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.,*
  263 F. Supp. 3d 293 (D.D.C. 2017)...................................................... 12

*Smith v. U.S. Dep't of Just.*
  251 F.3d 1047 (D.C. Cir. 2001)............................................................. 5

*Thomas v. Arn,*
  474 U.S. 140 (1985) ......................................................................... 10

*United States v. Hasting,*
  461 U.S. 499 (1983) ........................................................................... 7

*United States v. Jones,*
  433 F.2d 1176 (D.C. Cir. 1970)............................................................ 10

*United States v. Trump,*
  No. 23-cr-80101 (S.D. Fla. June 8, 2023), .............................. 2, 3, 7, 10

*United States v. Trump,*
  No. 24-12311 (11th Cir. July 18, 2024) ............................................. 2, 3

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ...........................................................................................7-8, 15
*U.S. Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ....................................................................................... passim
*Wash. Post v. Dep't of Homeland Sec.*,
   459 F. Supp. 2d 61 (D.D.C. 2006) ........................................................................ 13

**Statutes**

5 U.S.C. § 552 ....................................................................................................... 5, 10, 13

**Regulations**

28 CFR § 16.6(d) ......................................................................................................... 13

**Other Authorities**

S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965) ........................................................ 8

U.S. Const. amend. V ................................................................................................... 10

## INTRODUCTION

With possibly only hours before the U.S. Senate votes on Kash Patel's confirmation as Director of the Federal Bureau of Investigation ("FBI"), the urgency, irreparable harm, and benefit to the public, Senate and other FOIA requesters that compel American Oversight's motion for preliminary injunction are indisputable. American Oversight and the public it serves need the records at issue—non-exempt portions of Volume Two of the Special Counsel's report on the investigation of President Trump's alleged mishandling of classified documents at the end of his first term—because they likely contain information about Patel's truthfulness, trustworthiness, and regard for protecting highly classified information critical to national security. The requested records can and should be immediately produced ahead of any Senate vote to confirm Mr. Patel's nomination. This Court can and should prevent irreparable harm to American Oversight—and the public it serves—by granting the requested relief: ordering Defendant U.S. Department of Justice ("DOJ") to produce all non-exempt responsive records and an index justifying the withholding of any withheld records by 10:00 a.m. Eastern time on February 21, 2025.

DOJ's assertion that its post hoc, eleventh-hour February 11 letter to American Oversight renders the preliminary injunction motion moot or, alternatively, that another district court's order precludes this Court's ability to provide the relief American Oversight seeks should be rejected as a veiled attempt to confuse the issue properly before this Court. DOJ's February 11 "determination" that the records at issue are "protected from disclosure by a court injunction" disregards DOJ's obligations under FOIA, which require DOJ to identify all statutory exemptions it contends justify withholding records responsive to American Oversight's request. DOJ's misplaced reliance on *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 384-86 (1980), for the proposition that DOJ has satisfied its FOIA obligations and thereby rendered American Oversight's motion moot ignores Supreme Court decisions clarifying *GTE Sylvania* and

subsequent D.C. Circuit precedent applying that clarification to facts quite similar to those now before this Court. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 154 (1989) and *Morgan v. U.S. Dep't of Just.*, 923 F.2d 195, 195 (D.C. Cir. 1991). This Court can and should reject Defendant's spurious argument that an order from another district court, purporting to bar release of Volume Two beyond the pendency of the criminal case that limits that court's jurisdiction, supersedes *this* Court's authority under FOIA when the order's intended purpose has been obviated by final dismissal of the criminal case and all related appeals. *See Morgan*, 923 F.2d at 197.

A preliminary injunction is appropriate in FOIA cases like this one, where the requested records are relevant to a matter of urgent national importance for which time is of the essence. Because American Oversight has demonstrated each of the four factors justifying emergency relief, American Oversight respectfully requests that the Court grant its Motion for a Preliminary Injunction and order Defendant to produce all non-exempt responsive records and an index justifying the withholding of any withheld records by 10:00 a.m. Eastern time on February 21, 2025, or such other date as the Court deems appropriate.

## RELEVANT HISTORY

In June and July 2023, a grand jury returned indictments charging then-former President Donald Trump, Waltine Nauta, and Carlos De Oliveira with multiple criminal offenses relating to alleged mishandling of classified national defense documents. *United States v. Trump*, *et al.*, No. 23-cr-80101 (S.D. Fla. filed June 8, 2023), ECF No. 3; *id.* (S.D. Fla. filed July 27, 2023) ECF No. 85.

On July 15, 2024, Judge Aileen M. Cannon of the United States District Court for the Southern District of Florida, West Palm Beach Division, entered an Order dismissing the superseding criminal indictments of Trump, Nauta, and De Oliveira. ECF No. 672. DOJ appealed that dismissal Order as to all defendants to the United States Court of Appeals for the Eleventh

Circuit. ECF No. 673; *see also United States v. Trump*, No. 24-12311 (11th Cir. filed July 18, 2024), App. Doc. 1. Following the 2024 Presidential Election, on November 25, 2024, DOJ filed an unopposed motion to dismiss its appeal against then President-elect Trump. *Id.* , App. Doc. 79. The Eleventh Circuit entered an Order granting the motion and dismissing the appeal the following day. *Id.*, App. Doc. 81.

On January 6, 2025, Mr. Nauta and Mr. De Oliveira filed a joint emergency motion in Judge Cannon's court seeking to preclude DOJ from releasing both volumes of the Special Counsel's Report. *United States v. Trump*, No. 23-cr-80101, ECF No. 679.  Then-President-elect Trump filed a motion to intervene, or in the alternative, participate as amicus curiae as to Mr. Nauta and Mr. De Oliveira's motion for emergency relief. *Id.* (S.D. Fla. filed Jan. 7, 2023), ECF No. 681. On January 13, 2025, Judge Cannon, noting that the government had affirmed that the Report could be severed into two volumes, denied the emergency motion as to Volume One of the Report. *Id.,* ECF No. 697. On January 21, 2025, after hearing arguments as to Volume Two, Judge Cannon entered an Order denying President-Elect Trump's Motion to Intervene as to Volume Two, but granting his "alternative, unopposed request to participate as amicus to challenge [its] release," and barring the government from releasing Volume Two pursuant to the court's duty to "safeguard the due process rights of the accused," because it "contains voluminous and detailed Rule 16 discovery about the allegations in this criminal case, which remains pending on appeal as to Defendants Nauta and De Oliveira." *Id.*, ECF No. 714 ("Judge Cannon's Order" or "the Order").

On January 29, 2025, DOJ moved to voluntarily dismiss the appeal as to the remaining two defendants with prejudice. *United States v. Trump*, No. 24-12311 (11th Cir.), App. Doc. No. 111. On February 11, 2025, the Eleventh Circuit granted DOJ's motion and dismissed the appeal. *Id.*, App. Doc. No. 113-1.

# ARGUMENT

## I. American Oversight's Motion Is Not Moot

### A. DOJ has not provided a FOIA-compliant determination regarding American Oversight's request.

DOJ summarily contends that its February 11 letter constitutes a "final response as to [American Oversight]'s FOIA request," Def.'s Resp. to Pl.'s Mot. Prelim. Inj. ("Resp.") at 4, and that therefore, Plaintiff's motion for preliminary injunction as to both its request for expedited processing and for production of non-exempt responsive records is now moot. *See id.* at 4-5. However, FOIA sets forth specific requirements for what constitutes a "response" to a request. Not every letter on agency letterhead qualifies, and DOJ's merely saying its February 11 letter constitutes the "complete" response, *id.* at 3, required by FOIA does not make it so. Rather, a request to expedite becomes moot only after an "agency has provided a 'complete response to the request' [and] issued a decision and produced all documents as to which no exemption is being claimed." *See Power the Future v. U.S. Dep't of State*, No. CV 24-346 (RC), 2025 WL 343175, at *4 (D.D.C. Jan. 30, 2025) (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)); *see also Citizens for Resp. & Ethics in Wash. ("CREW") v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.").

Defendant's February 11 letter fulfills none of those requirements—in fact, DOJ *explicitly admits* that it has not even *considered* what statutory exemptions might apply, much less begun processing American Oversight's request, claiming that it "lacks authority to consider the releasability of this information under the FOIA" due to Judge Cannon's Order in the now-defunct criminal case. Resp. at 5; Brinkmann Decl., Resp. Ex. 1 at ¶ 9; *see also* Brinkmann Decl. Ex. C.

4

As discussed further below, DOJ's contention that Judge Cannon's order eliminates DOJ's obligation to make the determinations FOIA requires should be rejected.

### B. Defendant's failure to determine which exemptions apply and provide a complete response is unsupported by controlling law.

FOIA requires that, "upon any request for records," the agency "shall make the records promptly available," subject to certain enumerated exemptions. 5 U.S.C. § 552(a)(3)(A). "An agency *must* disclose agency records to any person under [5 U.S.C.] § 552(a) *unless* they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Tax Analysts*, 492 U.S. at 150–51 (internal quotation marks omitted) (emphasis added). Those nine exemptions "are explicitly exclusive," and withheld "agency records which do not fall within one of the exemptions are improperly withheld." *Id.* at 151 (internal quotation marks omitted). "The government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request." *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 764 (D.C. Cir. 2000). Furthermore, in the litigation context, all exemptions on which the agency relies must be brought at the same time. *See Smith v. U.S. Dep't of Just.*, 251 F.3d 1047, 1050–51 (D.C. Cir. 2001) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings . . . ." (quoting *Maydak*, 218 F.3d at 764)).

Here, DOJ has not done so. DOJ argues that, pursuant to the Supreme Court's decision in *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.,* 445 U.S. 375 (1980), Judge Cannon's Order excuses it from its obligations under FOIA, Resp. at 89, ignoring the fact that subsequent controlling case law contradicts that position. In *Morgan v. U.S. Department of Justice*, 923 F.2d 195 (D.C. Cir. 1991), the requestor sought the handwritten notes of an FBI agent's interview with a prosecution witness who testified in the requestor's earlier criminal proceeding. In that criminal proceeding, the district court found the notes were not exculpatory and entered them into the

court's record under seal. *Id.* at 195-96. Morgan unsuccessfully appealed to the Fourth Circuit to unseal the notes; he then submitted a FOIA request to DOJ for the sealed notes, and, when DOJ denied the request, filed a complaint in this District. *See id.* Much like DOJ asks this Court to do here, the district court granted DOJ's motion for summary judgment to dismiss Morgan's complaint, relying on *GTE Sylvania* to hold that "the Maryland district court and the Fourth Circuit sealing orders were not subject to collateral attack in another court under the FOIA." *Id.* at 196.

On appeal, the D.C. Circuit rejected the district court's reliance on *GTE Sylvania* and reversed the district court's grant of summary judgment, holding that "[b]ecause the district court . . . relied on the mere existence of the seal, without inquiring into its intended effect, it is not clear that *GTE Sylvania* governs, and a remand is necessary." *Id.* at 197. The "mere existence" of a sealing order did not justify DOJ's withholding the requested records in full pursuant to FOIA, *see id.*; rather, the sealing order's "intended effect" determined whether *GTE Sylvania* supported DOJ's position. *Id.*

**C. The "intended effect" of Judge Cannon's order was to protect the rights of the criminal defendants, and because that purpose has expired, it cannot supersede this Court's authority and Plaintiff's rights under FOIA.**

The plain text of Judge Cannon's Order sets forth its "intended effect": to protect the rights every criminal defendant has in a criminal proceeding under the Fifth and Sixth Amendments of the United States Constitution. *See* Order, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 21, 2025), ECF No. 714 at 8 ("A court has an affirmative duty. . . to safeguard the due process rights of the accused. . . . [t]his duty includes taking protective measures to ensure a fair trial. . . ."). Judge Cannon made explicit that her Order "concern[ed] a discovery disclosure matter collateral to the appeal" of her dismissal of the criminal indictments, *Id.* n.2, and was an "exercise of supervisory control over the flow of substantive, nonpublic information to protect [the defendants'] rights in a criminal case." *Id.* at 12-13. Those rights are no longer at issue since

dismissal of DOJ's appeal—all parties agree that the prosecution is over—and so the Order has no effect on this Court's authority to require DOJ to take action in compliance with American Oversight's rights under FOIA.

While Judge Cannon may have had authority to exercise supervisory control and bar DOJ's public release of Volume Two while the DOJ's appeal of her dismissal of the criminal indictments was pending at the Eleventh Circuit, when the Eleventh Circuit entered its order granting DOJ's motion to dismiss the criminal prosecution against the remaining defendants on February 11, 2025, that supervisory authority ended. *See U.S. v. Hasting*, 461 U.S. 499, 506 (1983) (noting that the federal court's exercise of supervisory power is "[g]uided by considerations of justice" and may only be employed "within limits"), and Section I.D., *infra*. *Even if* Judge Cannon's supervisory authority remains in effect pursuant to the original terms of the Order in connection with the criminal case before her, under the analysis in *Morgan*, the Order *does not* supersede *this* Court's authority to order release of non-exempt portions of the report under FOIA when the Order's intended purpose was obviated by dismissal of the appeal. *See Morgan*, 923 F.2d at 197. Either way, under the inquiry required by *Morgan*, the intended effect of Judge Cannon's Order—to protect the criminal defendants' right to a fair trial—has now expired, because there are no criminal defendants whose rights public access to Volume Two could place at risk.

As a result, Judge Cannon's February 18, 2025 order purporting to clarify "without ruling on the merits" that her discovery order is still in effect should hold no weight in this FOIA proceeding. *See* Paperless Order, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla.), ECF No. 718. The basic purpose of the Freedom of Information Act is "to open agency action to the light of public scrutiny," and to that end, it was designed "to create a broad right of access to 'official information,'" *U.S. Dep't of Just. v. Reporters. Comm. For Freedom of Press*, 489 U.S. 749, 772

(1989) (cleaned up), hence FOIA's policy of "'full agency disclosure unless information is exempted under clearly delineated statutory language,'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–361 (1965) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). As the Supreme Court noted in *Tax Analysts*, Congress sought "to insulate [FOIA] from judicial tampering and to preserve the emphasis on disclosure by admonishing that the 'availability of records to the public' is not limited, 'except as specifically stated.'" *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. at 151. Allowing the government to hide behind an unenforceable, unrelated district court order—one that has outlived its intended effect—as DOJ seeks to do here, frustrates FOIA's purpose, and is not supported by *GTE Sylvania*.

Because the intended effect of Judge Cannon's Order is no longer a concern, DOJ's blind reliance on *GTE Sylvania* is misplaced. In that case, a consumer group sought release under FOIA of manufacturers' accident reports that had been submitted to the Consumer Product Safety Commission ("CPSC"). *GTE Sylvania*, 445 U.S. at 377. After allowing the manufacturers an opportunity to substantiate their claims that the reports were confidential, CPSC informed the consumer group and the manufacturers that the reports did not fall within any of FOIA's exemptions, and that "even if disclosure was not mandated by [FOIA], the CPSC would exercise its discretion to release the material[.]" *Id.* The manufacturers then secured a permanent injunction from the Delaware district court barring CPSC from releasing the reports. *Id.* at 378. The consumer group did not intervene in the Delaware case, instead filing a FOIA action in this District. *Id.*

The Supreme Court reasoned that, under those circumstances, "[t]he concerns underlying the Freedom of Information Act [were] inapplicable, for the agency . . . made no effort to avoid disclosure." *Id.* at 386. It therefore approved the CPSC's compliance with the injunction, noting that when Congress passed the FOIA, it had not "intended to require an agency to commit contempt

of court to release documents." On the contrary, the Court noted, "Congress viewed the federal courts as the necessary protectors of the public's right to know." *Id*. at 387.

Unlike in *GTE Sylvania*, where the Delaware injunction was sought directly in response to the agency's intended FOIA disclosure and argued that release was prevented by, *inter alia*, (non-time-limited) FOIA exemptions, *id*. at 378, Judge Cannon's Order purportedly preventing release of Volume Two has nothing to do with FOIA and the rationale underlying the Order has since evaporated. In other words, in *GTE Sylvania*, plaintiffs were pitting one court's FOIA decision against another's. This case presents a far different scenario. Moreover, American Oversight's FOIA action and its request for preliminary relief are consonant with FOIA's goals and do not "evince a lack of respect for the judicial process." *Morgan*, 923 F.2d at 198. Judge Cannon's Order is clear in its intended effect: to protect criminal defendants' right to a fair trial. That is no longer a live concern.

With no criminal defendants left, all that remains is DOJ's continuing duty to comply with FOIA. As the Court explained in *Tax Analysts*, the agency's sidestepping of FOIA's "self-contained exemption scheme" in *GTE Sylvania* was "necessary in order to serve a critical goal independent of the FOIA – the enforcement of a court order." *Tax Analysts*, 492 U.S. at 155. But that reasoning does not apply here where FOIA imposes clear obligations, the Southern District of Florida lacks authority to indefinitely bar release of Volume Two based on a defunct criminal case that was once pursued beneath its roof, and under *Morgan*, the intended effect of Judge Cannon's pretrial publicity Order no longer applies.

There simply is no legal justification for this Court to do as DOJ insists it do and abdicate its judicial authority and jurisdiction in this FOIA case to a district court in the Southern District of Florida, West Palm Beach Division.

**D. Judge Cannon lacks authority to fully and indefinitely bar DOJ's release of non-exempt records to which American Oversight and the public are entitled under FOIA.**

This Court's independent jurisdiction to interpret and apply the Freedom of Information Act cannot be indefinitely limited by another federal court that once exercised jurisdiction over a now-terminated criminal case. While a court's supervisory authority may, as Judge Cannon asserted in her January 21 Order, enable it to fulfill its "affirmative duty, triggered at the inception of a criminal proceeding, to safeguard the due process rights of the accused," *see* Order, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 21, 2025), ECF No. 714 at 8 (citing U.S. Const. amend. V; *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979)), "[t]he supervisory power doctrine is an extraordinary one which should be 'sparingly exercised,'" *United States v. Jones*, 433 F.2d 1176, 1181–82 (D.C. Cir. 1970) (quoting *Lopez v. United States*, 373 U.S. 427, 440 (1963)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). Use of the supervisory power, even if otherwise "sensible and efficient," may not "conflict[ ] with constitutional or statutory provisions." *Thomas v. Arn*, 474 U.S. 140, 148 (1985). The limits on a court's supervisory power mean that exercise of that power should not be used when more narrowly tailored options are available to deter violative conduct.

This is *not* a case where a court presiding over a criminal prosecution issued a narrowly-tailored order that would have permitted release of portions of the report without interfering with the criminal defendants' rights—for instance, by requiring any release to comply with the requirements of FOIA, including withholdings pursuant to Exemptions 7(A) (interference with an ongoing law enforcement proceeding) and Exemption 3 (withholding of material exempted by statute). *See 5* U.S.C. § 552(b)(7)(A), (b)(3); *Boehm v. F.B.I.*, 983 F. Supp. 2d 154, 157 (D.D.C. 2013) (confirming Federal Rule of Criminal Procedure Rule 6(e) is covered by FOIA Exemption

3).[1] Rather, it involves a single federal district judge issuing what amounts to a nationwide gag order of indefinite duration. Notably, DOJ, which chose to drop the prosecution of the criminal defendants over which Judge Cannon had jurisdiction, and has thus far chosen *not* to ask for the Order to be dissolved, now claims that order limits the jurisdiction of *this* Court to interpret and apply the Freedom of Information Act. DOJ is wrong. *See Morgan*, 923 F.2d at 195 ("We now reverse and remand for the district court to determine whether the seal in fact prohibits the DOJ from disclosing [the requested records] under FOIA").

Fundamentally, a district court's supervisory power cannot extend beyond prospective criminal proceedings before it. *See Thomas v. Arn*, 474 U.S. 140, 148 (1985). Moreover, to the extent Judge Cannon's Order barring disclosure of Volume Two served as a "protective measure[] to ensure a fair trial and to minimize the effects of prejudicial pretrial publicity," Judge Cannon's Order at 8, such protection is no longer warranted as there is no prospective trial before Judge Cannon, nor any possibility of one, given DOJ's request to dismiss its appeal, which the Eleventh Circuit granted.

In sum, Judge Cannon's power to bar release of the records to which American Oversight is entitled under FOIA was extinguished on February 11, 2025, when the Eleventh Circuit ordered the appeals against Mr. Nauta and Mr. De Oliveira dismissed. They are no longer defendants who may suffer prejudice; they are no longer defendants at all. As there is no defendant who may suffer prejudice from the public's access to Volume Two, this Court, having properly taken jurisdiction over this FOIA proceeding, cannot be prevented from ordering DOJ to release non-exempt portions of the report on the grounds asserted by Judge Cannon in a voluntarily-dismissed criminal

---

[1] Nor is it a case where DOJ has specifically asserted any of these FOIA exemptions with respect to particular portions of the requested record, although a redacted version has been in DOJ's possession since the Special Counsel delivered the report in the first place. Compl. ¶ 9.

case. If it were as DOJ suggests, then any federal district court judge in the country could indefinitely block release of any federal agency record—no matter its present significance—on the grounds that the record may have raised pretrial publicity or due process concerns in a criminal prosecution that ended some time ago.

## II. All Four Preliminary Injunction Factors Demonstrate American Oversight's Entitlement to Preliminary Injunctive Relief.

### A. American Oversight has demonstrated irreparable harm.

Defendant's circular reasoning that "the relief that Plaintiff seeks will not 'actually prevent irreparable harm' . . . because "Judge Cannon has 'blocked' the release of Volume [Two] of the Report," Resp. at 6, ignores this Court's authority—indeed, its obligation— to conduct the inquiry into the "intended effect" of Judge Cannon's order instead of doing what Defendant insists: rely on the Order's "mere existence" to deny Plaintiff the relief it seeks. *See Morgan*, 923 F.2d at 197.  As discussed above in Section I.C., the "intended effect" of Judge Cannon's order expired on February 11, 2025. Consistent with the Supreme Court's reasoning in *GTE Sylvania* and *Tax Analysts* and the D.C. Circuit's holding in *Morgan*, this Court can and should prevent irreparable harm to American Oversight by ordering DOJ to release non-exempt portions of Volume Two and an index identifying withholdings under claimed exemptions, by February 21, in connection with the Senate's imminent vote on Kash Patel's confirmation. Intense public and congressional interest in the information about Mr. Patel contained in Volume Two underscore the gravity of what is at stake: "issues of vital national importance [that] cannot be restarted or wound back." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017).

Because of the urgent need for this information now, only preliminary injunctive relief will prevent harm to American Oversight and "protect the public's right to know," *GTE Sylvania*, 445

U.S. at 387, as Congress mandated under the Freedom of Information Act; *see, e.g., Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74-75 (D.D.C. 2006) (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *Elec. Priv. Info. Ctr. v. Dep't of Just. ("EPIC")*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program").

### B. American Oversight has demonstrated likelihood of success on the merits.

Defendant's response wrongly contends, again with circular reasoning based on a false premise, that American Oversight is unlikely to succeed on the merits of its claim that DOJ failed to respond timely to both its request for expedited processing and request for records because "now, [Defendant] has issued its complete response, and therefore, Plaintiff is unlikely to succeed on the merits because the issue is moot." Resp. at 8.

As discussed above, American Oversight's motion is not "moot" because DOJ's February 11 "response" is not "complete," nor is it a "determination" under FOIA.[2] *See, e.g.*, *Tax Analysts*, 492 U.S. at 150–51(agency must disclose agency records unless withheld pursuant to one of the nine enumerated exemptions listed in 5 U.S.C. § 552(b)); *CREW*, 711 F.3d at 182-83 (agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents). Instead, it is an admission that Defendant has made no effort to begin processing or otherwise determining what, if any, statutory exemptions apply to the requested records because it wrongly believes that it "lacks authority to

---

[2] Notably, Defendant's Feb. 11, 2025 letter includes no reference to Plaintiff's right to appeal, which must be included in an agency's "adverse determination," *see* 28 C.F.R § 16.6(d); 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), further underscoring that it is not a complete, final response under FOIA.

consider the releasability of [Volume Two] under the FOIA" due to Judge Cannon's injunction. Resp. at 5.

As discussed above, this Court should not allow Defendant to disregard its obligations under FOIA in reliance on "the mere existence" of Judge Cannon's Order, as the intended—and only permissible—effect of that order expired on February 11, 2025, rendering it invalid grounds to deny American Oversight's request. *See Morgan*, 923 F.2d at 197. Furthermore, as discussed in Section I.D. above, Judge Cannon's order is no longer a "a lawful injunction," *see Tax Analysts v. U.S. Dep't of Just.*, 845 F.2d 1060, 1064 n. 7 (D.C. Cir. 1988), aff'd, 492 U.S. 136 (1989), and this Court should reject Defendant's attempt to limit this Court's own jurisdiction and authority by giving it such weight.

## C. The balance of equities and public interest favor granting the requested relief.

American Oversight's requested relief will not burden others' interests and is indeed squarely within the public interest. DOJ again improperly hangs its hat on the "mere existence" of Judge Cannon's Order to argue that the balance of equities weigh against injunctive relief because it would "interfere with another case." Resp. at 9 (quoting *Children's Health Def. v. Ctrs. For Disease Control & Prev.*, Civ. A. No. 23-431 (TNM), 2024 WL 3521593, at *5 (D.D.C. July 24, 2024). As explained above, the criminal proceeding before Judge Cannon has concluded, there are no more criminal defendants and no possibility of trial, and thus nothing about this Court exercising its authority under FOIA could interfere with that case. *See supra*, Section I.C–D.

As for DOJ's argument that American Oversight's stated need for relief rests on "'bare suspicion' of misconduct," Resp. at 10, that is not so. Multiple U.S. Senators have sought disclosure of Volume Two for the same reason as American Oversight: to shed light on Kash

Patel's fitness to serve as FBI director before his confirmation vote. Compl. ¶ 25, Ex. 3.[3] Furthermore, there is no "bare suspicion" given Mr. Patel's *own testimony* at his January 30, 2025 confirmation hearing before the Senate Judiciary Committee. *See* Compl. ¶¶ 25, 28 n.11, *see also* Compl. Ex. 3. The report may reveal potential misconduct by Patel or it could clarify a lack of misconduct—either result would strongly benefit the public during debate over a high-profile, controversial nominee. American Oversight and the public cannot know what they do not know, but where, as here, there is non-speculative reason to believe the requested records will reveal relevant information about a matter of national importance, relief is in the public benefit. *See U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989) (FOIA rooted in self-evident premise that transparency and disclosure benefit the public in a participatory democracy).

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court grant a preliminary injunction requiring Defendant to make timely determinations on American Oversight's FOIA request, promptly process the request on an expedited basis, and produce all non-exempt responsive records and an index justifying any withheld records by 10:00 a..m Eastern time on February 21, 2025, or such other date as the Court deems appropriate.

Dated: February 19, 2025                    Respectfully submitted,

                                            */s/ Elizabeth Haddix*
                                            Elizabeth Haddix
                                            D.C. Bar No. 90019750
                                            Daniel Martinez
                                            D.C. Bar No. 90025922
                                            AMERICAN OVERSIGHT
                                            1030 15th Street NW, B255

---

[3] Notably, when ruling on a preliminary injunction, "all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).

Washington, DC 20005
(202) 869-5246
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*