UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> *Defendant*. | Civil Action No. 25-383 (TJK) |

**MEMORANDUM OPINION**

In early January this year, then-Special Counsel Jack Smith delivered a two-volume report to the Department of Justice. The second volume focuses on his investigation into the possession of classified documents at Mar-a-Lago following President Trump's first term. Unlike the first volume, though, the second has not been released publicly. Seeking to unveil Volume II, American Oversight submitted a FOIA request last month and followed that up with a motion for a preliminary injunction requiring DOJ to grant expedited processing of the request, make a timely determination on it, and produce non-exempt, responsive records. American Oversight insists that all of that must happen before Kash Patel's final confirmation vote for Director of the FBI because the Senate and public need to see whether Volume II casts doubt on his fitness for that role.

The bedrock requirement for the extraordinary relief that American Oversight seeks is irreparable harm—and, specifically, a showing that the requested relief will alleviate that harm. But American Oversight has not established that the injunction it requests would prevent (or even make less likely) the occurrence of the asserted harm of non-disclosure before Patel's confirmation vote. DOJ has already told American Oversight that it cannot disclose Volume II because a judge has enjoined the agency from doing so. American Oversight's request for an order compelling

expedited processing and a timely determination, then, would not increase the likelihood that Volume II will be disclosed; even assuming that rendering a "determination" requires DOJ to decide whether any specific FOIA exemption applies to Volume II, a judge's order will still prevent the agency from releasing the document no matter what exemption decisions it makes. For essentially the same reasons, an order requiring the production of records that DOJ has found to be non-exempt and responsive would also fail to move American Oversight closer to avoiding the alleged harm. Finally, with respect to its belated claim that DOJ is wrongfully withholding Volume II because of the judge's order—a claim that requests relief beyond what courts have recognized as available to a FOIA plaintiff through a preliminary injunction—American Oversight has not shown either that the relief it seeks would alleviate its irreparable harm or a likelihood that its claim will succeed. An agency does not improperly withhold a record when a court order bars disclosure, which is precisely what the injunction here does. For all these reasons, the Court will deny American Oversight's motion for a preliminary injunction.

I.     Background

    A.     The Freedom of Information Act

Under the Freedom of Information Act ("FOIA"), agencies must make records available to any person whose request "reasonably describes such records" and satisfies agency procedures. *See* 5 U.S.C. § 552(a)(3)(A). The statute requires an agency to determine "whether to comply with such [a] request" within twenty business days of receiving it, plus an extra ten in unusual circumstances. *Id.* § 552(a)(6)(A), (B). If the agency decides to comply with a request, it must make responsive, non-exempt records "promptly available" to the requester. *Id.* § 552(a)(6)(C)(i).

Sometimes a faster track is available. A requester who establishes "'a compelling need' or falls within 'other cases determined by the agency' is entitled to expedited processing of his request." *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C.

2020) (quoting § 552(a)(6)(E)(i), (ii)). Although agencies may define those "other cases," FOIA defines "compelling need," which requires a showing that (1) non-expedited treatment "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (2) "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." § 552(a)(6)(E)(v). An agency must process a qualifying request "as soon as practicable." § 552(a)(6)(E)(iii).

### B.     American Oversight's FOIA Request

Last month, then-Special Counsel Jack Smith delivered to the Department of Justice ("DOJ") his two-volume report describing his investigations of President Trump. ECF No. 1 ("Compl.") ¶ 8. Volume I focuses on "President Trump's potential interference with the lawful transfer of power following the 2020 election," while Volume II addresses the alleged "mishandling" of "classified documents after" President Trump "left office in 2021." *Id.* American Oversight, a non-profit organization aiming to promote "transparency in government," sought to further its mission by obtaining that report. *Id.* ¶¶ 5, 10, 12. So on January 8, 2025—the day after Smith delivered his report—American Oversight submitted a FOIA request for both volumes to DOJ's Office of Information Policy ("OIP"). *Id.* ¶¶ 8, 10. (American Oversight also submitted a request to the Executive Office of U.S. Attorneys, but OIP later found that request to be duplicative and closed it. *Id.* ¶¶ 10, 13.) Believing that the requested information was "urgently needed to inform the public" about the results of Smith's investigations, American Oversight asked for expedited processing. ECF No. 8-1 at 9.

Within a week of American Oversight's request, DOJ released Volume I to the public. Compl. ¶ 16 & n.3. The publication of Volume II, however, has been the subject of dispute in the

3

criminal prosecution of Waltine Nauta and Carlos De Oliveira. *See United States v. Nauta*, No. 23-cr-80101 (AMC), 2025 WL 45873 (S.D. Fla. Jan. 7, 2025). In that case, Judge Aileen Cannon dismissed the superseding indictment against President Trump, Nauta, and De Oliveria in July 2024 after ruling that Smith's appointment as special counsel "violates the Appointments Clause of the United States Constitution." *United States v. Trump*, 740 F. Supp. 3d 1245, 1252 (S.D. Fla. 2024). While that decision was on appeal before the Eleventh Circuit, Nauta and De Oliveira asked Judge Cannon to enjoin DOJ from "releasing a redacted version of Volume II" for "*in camera* review by the Chairmen and Ranking Members of the House and Senate Judiciary Committees."[1] *United States v. Nauta*, No. 23-cr-80101 (AMC), 2025 WL 252641, at *1 (S.D. Fla. Jan. 21, 2025). On January 21, 2025, Judge Cannon granted that request and imposed clear limitations on what DOJ could do with the second volume. *See id.* Specifically, her order "enjoined" the Attorney General and DOJ—including all "its officers, agents, officials, and employees"—"from (a) releasing, sharing, or transmitting Volume II . . . outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department . . . any information or conclusions in Volume II." *Id.* at 6. Nor does this injunction automatically expire. Instead, it "remains in effect pending further Court order." *Id.* And the parties must submit a status report "advising" Judge Cannon "of their position on th[e] Order" within thirty days of the "full conclusion of all appellate proceedings in" the case "and/or any continued proceedings in" her court, "whichever comes later." *Id.*

Since Judge Cannon's order, the government moved to voluntarily dismiss its appeal of the

---

[1] By that time, after the 2024 presidential election, the Eleventh Circuit had granted the government's motion to dismiss the appeal of Judge Cannon's decision as to President Trump. *See United States v. Trump*, No. 23-cr-80101 (AMC), ECF No. 677 (S.D. Fla. Nov. 26, 2024). So President Trump was no longer a defendant when Nauta and De Oliveira moved to prevent disclosure of Volume II.

4

dismissal of the superseding indictment against Nauta and De Oliveira. *See United States v. Trump*, No. 24-12311, ECF No. 111 (11th Cir. Jan. 29, 2025). The Eleventh Circuit granted that motion on February 11. *See United States v. Trump*, No. 24-12311, ECF No. 113 (11th Cir. Feb. 11, 2025). The parties have not yet filed a status report setting forth their positions on the injunction barring release of Volume II, nor has Judge Cannon rescinded or otherwise modified that order. She has, however, declined to grant American Oversight's motion for dissolution of the order, at least "[t]o the extent American Oversight seeks what amounts to an emergency ruling on its Motion." *United States v. Trump*, No. 23-cr-80101 (AMC), ECF No. 718 (S.D. Fla. Feb. 18, 2025).

On February 10, American Oversight sued DOJ for its handling of the FOIA request. *See generally* Compl. The same day, American Oversight moved for a preliminary injunction "ordering DOJ to provide" a "determination" on the FOIA request, "to process the request," and to "produce non-exempt, responsive records" by February 21. ECF No. 2 at 1. That is the key date, American Oversight contends, because Kash Patel's nomination for Director of the Federal Bureau of Investigation is pending before the Senate. *See* ECF No. 2-2 at 5. And it claims that Volume II will "shed light on" Patel's "truthfulness, trustworthiness, and regard for protecting classified information"—all critical information for the public and Senate to assess whether he is fit to lead "the nation's principal law enforcement agency." *Id.* at 5, 12–13.

The day after American Oversight filed its motion, DOJ responded to the FOIA request. *See* ECF No. 8-1 at 17. Volume I, DOJ explained, is publicly available on its website. *See id.* And DOJ "determined" to withhold Volume II "in full because it is protected from disclosure by" Judge Cannon's "injunction." *Id.* So DOJ "lacks authority to consider" Volume II's "releasability." *Id.* (citing *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384–86

5

Case 1:25-cv-00383-TJK   Document 11   Filed 02/20/25   Page 6 of 15

(1980)). The Court set an expedited briefing schedule that same day, and American Oversight's motion is ripe for decision.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 24 (2008). To obtain that remedy, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors." *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014).

Two factors are essential: likelihood of success on the merits and irreparable harm. Before the Supreme Court's decision in *Winter*, a sliding-scale approach permitted a "weak showing on one factor to be overcome by a strong showing on another." *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 96. But now "it is clear that failure to show a likelihood of irreparable harm" is, "standing alone, sufficient to defeat the motion." *Id.* (quoting *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018)); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). So too is the "failure to show a likelihood of success on the merits" enough to show that a preliminary injunction is not warranted. *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018).

Although "[i]t is rare that *any* preliminary relief is appropriate in a FOIA case," these familiar principles still apply. *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 92. A FOIA plaintiff seeking a preliminary injunction must clear the "high standard for irreparable injury" set by the D.C. Circuit. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Specifically, a qualifying "injury 'must be both certain and great,'" and "it must be actual" rather than "theoretical." *Id.*

6

(quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). More than that, the injury must be truly "irreparable"—*i.e.*, "beyond remediation." *Id.* So courts in this District "have generally found irreparable harm in FOIA preliminary-injunction cases only where the requested documents are time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." *Heritage Found. v. EPA*, No. 23-cv-748 (JEB), 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023) (citation omitted).

**III.    Analysis**

American Oversight is not always clear when describing the injunctive relief it seeks. At times, it frames the relief generally: "a preliminary injunction ordering" DOJ "to release the non-exempt portions" of Volume II. ECF No. 2-2 at 5. Elsewhere, American Oversight parses things more finely, requesting an injunction ordering DOJ "to make timely determinations on [the] FOIA request," to "promptly process the request on an expedited basis," and to "produce all non-exempt responsive records and an index justifying the withholding of any withheld records." *Id.* at 18. The latter approach makes sense analytically and seems to track both the complaint and the irreparable harm that American Oversight asserts. *See, e.g.*, *id.* at 13 ("American Oversight will be harmed irreparably if DOJ does not grant expedited processing, promptly process American Oversight's FOIA request, and promptly produce non-exempt responsive records."). So—before getting to the unusual relief American Oversight seeks in its reply—the Court first considers whether American Oversight is entitled to any of the following forms of preliminary relief: an order directing DOJ to (1) grant expedited processing of the FOIA request, (2) make a timely determination and process the request, and (3) produce all non-exempt, responsive records. Still, with respect to all its requested relief, American Oversight has not shown that the relief will alleviate the threat of irreparable harm it seeks to avoid, so its motion will be denied.

7

### A. American Oversight Has Not Shown That the Requested Relief Will Alleviate the Threat of Irreparable Harm That It Asserts

American Oversight has not shown a likelihood that the above requested relief "will alleviate the threat of irreparable harm" that it claims. *Hunter v. FERC*, 527 F. Supp. 2d 9, 15 (D.D.C. 2007). That is a prerequisite for establishing the kind of irreparable harm warranting preliminary relief. After all, a "plaintiff may be irreparably harmed by all sorts of things." *Sierra Club v. DOE*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011). "[B]ut the irreparable harm considered" in the preliminary-injunction context "must be" the kind that is "caused by the conduct in dispute and remedied by the relief sought." *Id.*; *cf. Brenntag Int'l Chems. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ("[A] perhaps more accurate description of the circumstances that constitute irreparable harm is that where, *but for the grant of equitable relief*, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." (emphasis added)).

American Oversight asserts a harm tethered to the non-disclosure of Volume II before Patel's confirmation hearing. In its view, the requested relief is critical so that the public and Senate have the information they need to know whether Patel should lead the FBI. *See* ECF No. 2-2 at 13. Without Volume II in hand before Patel's "pivotal confirmation vote," American Oversight cannot fulfill its mission of ensuring informed public debate on key issues. *Id.* at 14. The relief that American Oversight seeks, however, goes to DOJ's *processing* of the FOIA request rather than to the basis on which DOJ withheld Volume II: American Oversight wants expedited processing, a timely determination on the FOIA request, and the production of non-exempt, responsive records. *Id.* at 18. And the problem for irreparable-harm purposes is that an order compelling any of this relief would not prevent—or even make less likely—the harm of non-disclosure that American oversight claims.

DOJ has explained to American Oversight both its decision about Volume II—the agency will not disclose it—and the reason—Judge Cannon's order prohibiting the agency from doing that. *See* ECF No. 8-1 at 17. In its reply, American Oversight lays out other things that it believes these claims for expedited processing, a timely determination, and the production of non-exempt, responsive records would require DOJ to do if successful on the merits. *See* ECF No. 9 at 8–9. So contrary to DOJ's position, *see* ECF No. 8 at 7–9, these claims are not likely moot.[2]

But dodging that obstacle does not solve American Oversight's irreparable-harm problem. An order telling DOJ to process the FOIA request rapidly, including by making FOIA exemption decisions, would not make American Oversight less likely to suffer the harm resulting from the non-disclosure of Volume II. Indeed, if that harm exists (or might exist), it is not because DOJ has yet to make a "determination" or to process the FOIA request in a way that catalogues claimed exemptions. Even if DOJ responded to an order along those lines by immediately providing an exhaustive list of asserted exemptions—and even if the agency claimed *no* exemptions—Judge Cannon's order would still bar the release of Volume II. American Oversight would be no closer to obtaining the records before Patel's final confirmation vote. So this relief would not "alleviate the threat of" the claimed "irreparable harm." *Hunter*, 527 F. Supp. 2d at 15.

The same holds true for an order requiring DOJ to produce the records that it has found to

---

[2] As part of this argument, American Oversight contends that to make a timely determination, DOJ must decide whether any FOIA exemptions apply to the requested records. *See* ECF No. 9 at 8. DOJ has not had the opportunity to rebut this argument, and the Court is dubious that is so. On this front, the caselaw seems to require the agency to determine only "the scope of the documents it intends to produce and withhold, and the *reasons*"—not necessarily the *exemptions*—"for withholding any documents." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (Kavanaugh, J.) (emphasis added). Here, DOJ identified the documents it intended to produce—none—and "explain[ed] the reasons for its withholding . . . decision[]"— Judge Cannon's order barring disclosure of Volume II. *Khine v. DHS*, 943 F.3d 959, 967 (D.C. Cir. 2019). Still, the Court assumes for purposes of resolving its motion that American Oversight is correct because this point does not affect whether it is entitled to a preliminary injunction.

be non-exempt and responsive. Again, DOJ has determined that it may not release Volume II, so an order to that effect would not help American Oversight avoid any harm—irreparable or otherwise. Judge Cannon's order would prevent DOJ from releasing Volume II even if DOJ decided that no FOIA exemptions applied to the documents requested by American Oversight. In short, American Oversight's "inability to obtain redress from an order" granting the relief it seeks "dooms [its] ability to show irreparable harm." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 207 (D.D.C. 2014); *see also Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 247 (D.D.C. 2015) (preliminary injunction not warranted where the requested relief would not "redress the alleged irreparable harm"). And that is an independent "ground[] for refusing to issue [the] preliminary injunction." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

As alluded to above, in its reply, American Oversight also asks for something more: an order not only compelling DOJ to produce non-exempt, responsive records, but also finding that DOJ's decision to withhold Volume II is wrong and requiring its immediate release. *See* ECF No. 9 at 10–16. The same irreparable-harm problem dooms this claim for relief too. True, if the Court concluded that American Oversight were likely to succeed on the merits of this claim, it could issue an order requiring disclosure. But that order, of course, would still conflict with Judge Cannon's injunction, so it is unlikely that it would alleviate the threat of the irreparable harm that American Oversight fears. In other words, it is unlikely that DOJ would simply disclose Volume II to American Oversight and violate her injunction, rather than seek emergency relief from this Court's order in the D.C. Circuit. Moreover, the Court's conclusion that is it is unlikely that DOJ would disclose in that scenario is bolstered by its conclusion, explained below, that American Oversight has failed to show a likelihood of success on the merits of its claim that DOJ is wrongfully withholding Volume II. Because avoiding the "feared end result" of non-disclosure before

Patel's confirmation vote would rest on a sequence of unlikely events—*i.e.*, DOJ contravening another judge's order, and doing so without seeking relief in the D.C. Circuit when its merits position is so strong that withholding is proper—American Oversight has not shown that such an order from this Court would "*likely*, as opposed to merely *possibl[y]*," alleviate the alleged harm. *Cf. Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 540 F. Supp. 3d 45, 57 (D.D.C. 2021) (internal quotation marks and citation omitted).

### B. American Oversight Has Not Shown a Likelihood of Success on Its Claim that DOJ Is Wrongfully Withholding Records

In addition to the irreparable-harm problem for its claim that the Court should find DOJ's withholding improper and order release of Volume II, American Oversight is not likely to prevail on the underlying merits of this claim—an independent basis for denying a request for preliminary relief that relies on it. *See, e.g.*, *Williams v. Walsh*, 619 F. Supp. 3d 48, 62 (D.D.C. 2022).

To begin, though, the Court points out that American Oversight's request stretches the recognized bounds of preliminary relief in the FOIA context. Indeed, in every FOIA preliminary-injunction case that American Oversight cites, the dispute was about whether the agency had to expedite processing or, in some cases, produce documents based on the *agency's* determination of whether they were releasable.[3] So even in FOIA cases in which the plaintiff received the

---

[3] *See Al-Fayed v. CIA*, 254 F.3d 300, 302 (D.C. Cir. 2001) ("Plaintiffs also filed a motion for a preliminary injunction directing the agencies to expedite the processing of the FOIA requests."); *Am. Oversight v. U.S. Dep't of State*, 414 F.Supp.3d 182, 188 (D.D.C. 2019) (ordering agency to "process and release all non-exempt documents from the narrowed requests" by a date certain); *Protect Democracy Project v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 303 (D.D.C. 2017) (ordering expedited processing but declining to order production of records by a date certain); *Wash. Post v. DHS*, 459 F. Supp. 2d 61, 68 (D.D.C. 2006) ("As the plaintiff correctly notes, if the court orders the [agency] to process the request, the propriety of any exemption claims will remain to be litigated." (internal quotation marks and citation omitted)); *Elec. Priv. Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 43 (D.D.C. 2006) (ordering agency to complete processing of requests, "produce or identify all responsive records within 20 days," and justify the "withholding of any documents

extraordinary relief of a preliminary injunction, that relief has not extended to litigating the merits of the agency's decision to withhold certain records. The plaintiffs were at most entitled to expedited production, sometimes by a particular date, of the records deemed releasable by the agency. Thus, it is not clear to the Court that this claim is even cognizable at this stage.

Assuming that the claim is cognizable, and in addition to faltering on the irreparable-harm hurdle, American Oversight's seemingly unprecedented request fails to show a likelihood of success. American Oversight reasons that DOJ may not "disregard its obligations under FOIA in reliance on 'the mere existence'" of an order by a federal judge plainly barring DOJ from doing what American Oversight asks. ECF No. 9 at 18. To put it mildly, that claim is not likely to succeed on the merits, which is enough "to defeat [the] preliminary-injunction motion." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016); *see also Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009) (courts "need not proceed to review the other three preliminary injunction factors" when the movant shows "no likelihood of success on the merits").

DOJ remains subject to Judge Cannon's injunction "barring disclosure" of Volume II, meaning that the agency has "no discretion" to release that document. *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). Put differently, DOJ "cannot be compelled through the FOIA to circumvent the normal procedural requirements for challenging a valid injunction." *Tax Analysts v. DOJ*, 845 F.2d 1060, 1064 n.7 (D.C. Cir. 1988). And in this way, "it is not [DOJ's] decision to withhold the documents at all" while Judge Cannon's injunction remains in force. *GTE Sylvania*, 445 U.S. at 386. Rather, DOJ must "obey that decree until it is modified

---

responsive to[the] requests within 30 days"); *Am. Oversight v. U.S. Dep't of Def.*, No. 24-cv-2789 (PLF), 2024 WL 4546844, at *1 (D.D.C. Oct. 22, 2024) (ordering expedited processing and production of "responsive, non-exempt records").

or reversed, even if" the agency has "proper grounds to object to the order." *Id.*  In short, Judge Cannon's order "circumscribes" DOJ's "ability to produce" Volume II, so DOJ's "failure to release" that document cannot "be deemed improper." *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 335 (D.D.C. 2015).

Against this authority, American Oversight contends that what really matters is the underlying *purpose* of Judge Cannon's order, not its plain terms.  That order focuses on protecting the rights of criminal defendants, American Oversight reasons, so the dismissal of the appeal in that case means that the "prosecution is over" and that the order's purpose is no longer served.  ECF No. 9 at 10–11.  For support, American Oversight leans on *Morgan v. United States Department of Justice*, which in its view held that the "intended effect" of a court order is the key consideration for whether *GTE Sylvania* applies.  *Id.* at 9–10 (citing 923 F.2d 195, 197 (D.C. Cir. 1991)).

American Oversight wildly overreads *Morgan*.  Rather than support American Oversight's argument, *Morgan* undermines it by emphasizing that the inquiry turns on what the court order *actually* does: "The reasoning of *GTE Sylvania* thus indicates that the proper test for determining whether an agency improperly withholds records under [a court order] is whether the [court order], like an injunction, *prohibits* the agency from disclosing the records." *Morgan*, 923 F.2d at 197.  The problem in *Morgan* was that the district court "did not determine whether the seal . . . prohibit[ed] the DOJ from releasing the" records.  *Id.*  In other words, a court may not deem an agency's withholding permissible under *GTE Sylvania* without finding that a judicial order prohibits disclosure.  But that is exactly what Judge Cannon's order does, in no uncertain terms, by barring DOJ from "releasing, sharing, or transmitting Volume II . . . outside the Department of Justice, or . . . otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II." *Nauta*, 2025 WL 252641, at

13

*6. Tellingly, American Oversight never engages with this language. Nor does it explain how the "intended *effect*" is anything but clear: DOJ may not release or disclose Volume II. Nothing in *Morgan* sanctions a free-floating inquiry by this Court into whether the underlying rationale for another judge's order somehow overrides its plain terms.

American Oversight's last redoubt is taking aim at the legitimacy of Judge Cannon's order. Refusing to order DOJ to release Volume II under FOIA would, in American Oversight's view, permit "any federal district court judge in the country" to "indefinitely block release of any federal agency record." ECF No. 9 at 16. And because "Judge Cannon's power to bar release of" Volume II "was extinguished" when the Eleventh Circuit dismissed the appeals in the prosecution of Nauta and De Oliveira, her order cannot support DOJ's withholding. *Id.* at 15.

American Oversight cites no case in which an agency was found to improperly withhold records because one district judge disagreed—for any reason—with another judge's decision to prohibit their disclosure. As the Supreme Court has explained, "the established doctrine" is "that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, *even if they have proper grounds to object to the order*." *GTE Sylvania*, 445 U.S. at 386 (emphasis added). American Oversight might "disagree[] over whether" Judge Cannon "erred in issuing the" injunction—or, in this case, maintaining it pending further briefing. *Id.* at 386–87. But requesting a preliminary injunction in a FOIA case is not the proper way to challenge Judge Cannon's order; American Oversight may, as it has started to, argue before Judge Cannon (and possibly the Eleventh Circuit) that the order is invalid or should be dissolved. But DOJ is "required to obey" that order while it remains operative "out of respect for judicial process," so the agency does not violate FOIA by doing just that. *Id.* at 387 (internal quotation marks and citation omitted). Thus, American Oversight has not shown a likelihood of

success on this claim.

## IV. Conclusion

For all the above reasons, the Court will deny Plaintiff's Motion for Preliminary Injunction, ECF No. 2. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 20, 2025