**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN OVERSIGHT, | ) ) ) |
| *Plaintiff*, | ) ) ) ) |
| v. | ) Case No. 25-cv-383 (TJK) ) ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) |
| *Defendant*. | ) ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 1

    I.    American Oversight's FOIA Request and Prior Proceedings. ............................... 1

    II.    This Action and Related Proceedings in the Southern District of Florida. ............. 3

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.    DOJ Has Failed to Comply with Its FOIA Obligations. ........................................ 8

    II.    This Court Should Not Endorse DOJ's Skirting of Its Compliance with FOIA through Its Strategically Inconsistent Positions. ..................................................... 10

    III.    This Court Should Not Cede Its Ability to Adjudicate American Oversight's FOIA Claims. .................................................................................................. 12

CONCLUSION .................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Allen v. Wright*,
   468 U.S. 737 (1984) .................................................................................................... 12
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 6
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6
*Carney v. Adams*,
   592 U.S. 53, 58 (2020) ................................................................................................ 13
*DiBacco v. U.S. Dep't of the Army*,
   926 F.3d 827(D.C. Cir. 2019)........................................................................................ 7
*Founding Church of Scientology of Washington, D.C., Inc. v. Bell*,
   603 F.2d 945 (D.C. Cir. 1979)..................................................................................... 10
*GTE Sylvania, Inc. v. Consumers Union*,
   445 U.S. 375 (1980) .................................................................................................... 11
*Insider Inc. v. Gen. Servs. Admin.*,
   92 F.4th 1131 (D.C. Cir. 2024)...................................................................................... 8
*La. Env't Action Network v. Browner*,
   87 F.3d 1379 (D.C. Cir. 1996)................................................................................12-13
*Leopold v. Fed. Bureau of Investigation*,
   No. CV 22-1921 (BAH), 2025 WL 445183 (D.D.C.)......................................... 7, 8, 9
*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) .................................................................................................. 8, 9
*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
   3 F.4th 350, 357 (D.C. Cir. 2021).................................................................................. 8
*Scott v. District of Columbia*,
   101 F.3d 748 (D.C. Cir. 1996)....................................................................................... 6
*Smith v. U.S. Dep't of Just.*,
   251 F.3d 1047, 1050–51 (D.C. Cir. 2001)..............................................................10-11
*United States v. Trump*,
   No. 23-cr-80101 (AMC) (S.D. Fla.)..................................................................... passim
*United States v. Trump*,
   No. 24-12311 (11th Cir.) .................................................................................... 2, 3, 12
*U.S. Dep't of Just. v. Tax Analysts*,
   492 U.S. 136, 150-51 (1989) ...............................................................................10, 11-12
*Util. Air Regul. Grp. v. E.P.A.*,
   320 F.3d 272, 277 (D.C. Cir. 2003).............................................................................. 12
*Valambhia v. United Republic of Tanzania*,
   964 F.3d 1135 (D.C. Cir. 2020)..................................................................................... 6
*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
   454 U.S. 464 (1982) .................................................................................................... 12

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................................ 12

**Statutes & Regulations**                                                                                          **Page(s)**

5 U.S.C. § 552 .................................................................................................................... 8, 9, 10

28 C.F.R. §§ 600.8 ..................................................................................................................... 9

**Other Authorities**                                                                                               **Page(s)**

U.S. Const. art. III, § 2 ........................................................................................................ 12-13

Fed. R. Civ. P. 12 ....................................................................................................................... 6

Fed. R. Civ. P. 56 ....................................................................................................................... 6

Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't
   of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf. .......................................................... 2

*Read the Special Counsel's Report on the Trump Election Case*, N.Y. Times (Jan. 14, 2025),
   https://www.nytimes.com/interactive/2025/01/14/us/report-of-special-counsel-smith-volume-1-january-2025.html. ................................................................................................................. 2

In nearly the same breath, Defendant tells this Court it cannot comply with the Freedom of Information Act because of another court's order, while telling that other court that it should bar release of the requested record. Defendant should not be allowed to manufacture an obstacle and cite to that obstacle as its reason for inaction; that is akin to barricading the courthouse doors and then arguing that no one appeared for the hearing. Moreover, Defendant's motion should be construed as one for summary judgment and denied because a material fact remains in dispute—specifically, whether the Department of Justice has fulfilled its FOIA obligation to determine whether any statutory exemptions apply to the records American Oversight seeks. Defendant urges this Court to defy long-established precedent under the Freedom of Information Act that (1) an agency may only withhold information that falls within one of the statute's nine enumerated exemptions from disclosure, which must be narrowly construed; and (2) the agency must promptly notify the requester which, if any, of those nine exemptions it is claiming. Finally, because no Article III jurisdiction remains in the Southern District of Florida, this Court need not cede its ability to adjudicate American Oversight's FOIA claim. For all these reasons, DOJ's motion should be denied.

## BACKGROUND

### I.   American Oversight's FOIA Request and Prior Proceedings.

On January 8, 2025, American Oversight submitted a Freedom of Information Act ("FOIA") request to the U.S. Department of Justice ("DOJ") seeking expedited production of the Special Counsel's report on the investigation of President Trump's potential interference with the lawful transfer of power following the 2020 election (Volume I) and allegations of mishandling of a trove of classified documents after Trump left office in 2021 (Volume II). Compl. ¶ 10, ECF No. 1.

On January 14, 2025, the Department of Justice ("DOJ") publicly released Volume I,[1] but declined to release Volume II pending resolution of the criminal charges in the U.S. District Court for the Southern District of Florida before U.S. District Judge Aileen Cannon against Walt Nauta, an aide to President Trump, and Carlos De Oliveira, property manager of President Trump's Mar-a-Lago estate, concerning their role in Trump's alleged mishandling of classified documents.[2]

The Southern District of Florida had already, in July 2024, dismissed the superseding criminal indictments of then Presidential Nominee Trump, Nauta, and De Oliveira. *United States v. Trump*, No. 23-cv-80101 (S.D. Fla. July 15, 2024), ECF No. 672. However, the government then appealed the Court's dismissal Order as to all defendants to the United States Court of Appeals for the Eleventh Circuit. *United States v. Trump*, No. 23-cv-80101 (S.D. Fla. filed July 17, 2024), ECF No. 673; *see also United States v. Trump*, No. 24-12311 (11th Cir.). On November 25, 2024, following the 2024 Presidential Election, the government filed an unopposed motion to dismiss its appeal against then President-elect Trump, and the Eleventh Circuit granted that motion, thus ending the case against Trump. App. Doc. 79, 81. The charges against Nauta and de Oliveira remained pending.

On January 6, 2025, Nauta and de Oliveira filed an emergency motion seeking to preclude the government from releasing the entirety of the Special Counsel's Report. *United States v. Trump*, No. 23-cv-80101 (S.D. Fla. filed Jan. 6, 2025), ECF No. 679. On January 21, 2025, Judge Cannon entered an order barring DOJ "from (a) releasing, sharing, or transmitting Volume II . . .

---

[1] *See Read the Special Counsel's Report on the Trump Election Case*, N.Y. TIMES (Jan. 14, 2025), https://www.nytimes.com/interactive/2025/01/14/us/report-of-special-counsel-smith-volume-1-january-2025.html.

[2] *See* Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

2

outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department . . . any information or conclusions in Volume II." Order, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 21, 2025), ECF No. 714, at 13 (hereinafter "Cannon Order"). Judge Cannon grounded her injunction in courts' "affirmative duty, triggered at the inception of a criminal proceeding, to safeguard the due process rights of the accused." *Id*. at 8. She ordered the parties to, within thirty days after resolution of any appellate proceedings, advise of their positions on the continued force of the injunction. *Id.* at 13–14.

On January 29, 2025, the government moved to voluntarily dismiss the appeal as to Nauta and de Oliveira, the only remaining two defendants, with prejudice. App. Doc. No. 111. On February 11, the Eleventh Circuit granted DOJ's motion to dismiss its appeal of Judge Cannon's order dismissing the criminal indictments against Nauta and de Oliveira. App. Doc. No. 113-2. That action thus ended all criminal proceedings. It also triggered the 30-day period under the Cannon Order, resulting in a March 12, 2025 deadline for the parties to report their positions to Judge Cannon. *See* Cannon Order at 13–14.

**II.    This Action and Related Proceedings in the Southern District of Florida.**

On February 10, after DOJ failed to timely issue a determination regarding American Oversight's FOIA request and respond to its request for expedited processing, American Oversight filed this action. American Oversight moved for a preliminary injunction, seeking a determination on its FOIA request and expedited processing request and the release of all non-exempt portions of Volume II. ECF No. 2. One day after American Oversight filed its Complaint and Motion for Preliminary Injunction, DOJ notified American Oversight that it "lacks authority to consider the releasability of [Volume II] under the FOIA," because it is "protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division." Def.'s Mot., Ex. 1 at ¶¶ 9–10 (Decl. of Vanessa R. Brinkmann (Feb. 14,

3

2025)), ECF No. 12-1 (Mar. 11, 2025), and Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. Relief, Ex. C (Letter from Vanessa R. Brinkmann, Senior Counsel, Off. of Info. Policy, Dep't of Justice, to Elizabeth Haddix, American Oversight (Feb. 11, 2025), ECF No. 8-1).

Three days later, American Oversight filed an expedited motion to intervene in *U.S. v. Trump*, seeking clarification of the status of Judge Cannon's injunction in light of the dismissal of DOJ's appeal and, alternatively, its prompt dissolution. *U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. filed Feb. 14, 2025), ECF No. 717. Four days later, "[w]ithout ruling on the merits of the intervention or dissolution requests," Judge Cannon ruled that that her January 21 order "remains in effect," referencing the terms of that order, including the parties' status report deadline. *United States v. Trump*, No. 23-cr-80101, ECF No. 718 (S.D. Fla. Feb. 18, 2025).

This Court subsequently denied American Oversight's Motion for Preliminary Injunction, noting that "DOJ remains subject to Judge Cannon's injunction 'barring disclosure' of Volume II." Mem. Op., at 12 (Feb. 20, 2025), ECF No. 11.

Meanwhile, in the Southern District of Florida, another third party, the Knight First Amendment Institute at Columbia University ("Knight Institute"), moved to intervene and for an order to release Volume II. Judge Cannon then extended the deadline for DOJ, Nauta and de Oliveira to state their positions on her injunction to March 14, 2025, ordered Nauta and de Oliveira to respond to the motions to intervene by the same date, and ordered DOJ to file a response to the intervention motions by March 21. *U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. Feb. 28, 2025), ECF No. 726. Judge Cannon subsequently gave DOJ until March 24 to respond to American Oversight's motion to intervene. *Id.*, ECF No. 735.

This Court has since ordered the parties to "submit a joint status report by April 2, 2025, proposing a schedule for further proceedings, if any, in this case." Minute Order (Mar. 11, 2025).

4

Subsequently, Defendant filed its Motion to Dismiss, Or Alternatively, for Summary Judgment. ECF 12 (hereinafter, "Motion").

On March 14, in the Southern District of Florida, DOJ, de Oliveira and Nauta stated their positions regarding Judge Cannon's injunction, stating they:

> do[] not object to the Court keeping its order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II outside the Department of Justice, or sharing any information contained in Volume II with anyone outside the Department of Justice, in place. . . The United States, Waltine Nauta, and Carlos De Oliveira also agree that **under no circumstances should the Court *order* the release of Volume II**. . .

*U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. filed Mar. 14, 2025), ECF No. 738 (Joint Status Report) (bold text added; italics in original). DOJ stated that any decision regarding release "outside the Department of Justice should rest with . . . the Attorney General." *Id.* at 2. It made no mention of its FOIA obligations to the multiple requestors who are seeking release of the report, nor to the American public's interest in Volume II.

DOJ then opposed American Oversight's motion to intervene, arguing that American Oversight fails to qualify for the "narrow class of exceptions allowing intervention in a criminal case" in which "a district court overseeing a criminal matter may directly decide the rights of third parties." *U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. filed Mar. 24, 2025), ECF No. 740 at 5–6 (United States' Response to American Oversight's and [Knight Institute's] Motions to Intervene) ("DOJ Response to Mots. Intervene"). DOJ argued that neither proposed intervenor "ask[s] the Court to adjudicate its FOIA rights," and noted that American Oversight seeks to "intervene to expeditiously rescind an order with some collateral consequences related to the merits of [its] FOIA claims" "in a different federal district court." *Id.* at 6. DOJ described the purpose of the motion to intervene as having "some secondary or collateral implications" on American Oversight's FOIA request in this Court, and urged Judge Cannon to deny intervention to American

5

Oversight because it "fail[s] to cite a case in which a district court has allowed a third party to intervene in a criminal case to contest an order that might have some secondary or collateral implications for that party's FOIA claims in another lawsuit." *Id*.

This Court denied American Oversight's motion to stay the instant proceeding pending resolution of matters before Judge Cannon but granted American Oversight's motion to extend its deadline to respond to DOJ's Motion to March 28. Minute Order (Mar. 21, 2025).

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the court must "construe all reasonable inferences in the plaintiff['s] favor." *Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1137 (D.C. Cir. 2020). Rule 12(d) requires, in relevant part, that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Thus, if the Court considers either the Cannon Order or Vanessa Brinkmann's Declaration as Defendant urges it to do, then it must treat DOJ's motion as one for summary judgment under Fed. R. Civ. P. 56. Under Rule 56, summary judgment is appropriate when the record as a whole demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence in the light most favorable to American Oversight, as the non-moving party. *Scott v. District of Columbia*, 101 F.3d 748, 752–53 (D.C. Cir. 1996).

In FOIA cases, "[a]n agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions, typically through affidavit or declaration." *DiBacco v. U.S. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019) (internal

6

quotes omitted). "Summary judgment is warranted based on the agency's affidavit if it describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.* (internal quotes omitted); *see also Leopold v. Fed. Bureau of Investigation*, No. CV 22-1921 (BAH), 2025 WL 445183, at *6 (D.D.C. Feb. 10, 2025) (same).

## ARGUMENT

Defendant's Motion should be denied for three reasons. First and foremost, genuine issues of material fact remain as to whether Defendant is withholding any portions of Volume II pursuant to any of the nine exclusive FOIA exemptions. Ms. Brinkmann's Declaration states that, because of the Cannon Order, "OIP lacks the authority to consider the releasability of the requested records." Brinkmann Decl. at 4, ECF No. 12-1. Either DOJ has not even considered which exemptions may apply, or it has but refuses to notify American Oversight of its claims of exemption based on its belief that the Cannon Order absolves it of all FOIA obligations.

Second, the motion should be denied because DOJ has given this Court and the Southern District of Florida inconsistent statements regarding disclosure of Volume II—telling this Court that, through no fault of its own, its hands are tied, while affirmatively asking Judge Cannon to continue to bar Volume II's release in its entirety, and actively opposing American Oversight's effort to get Judge Cannon to dissolve her injunction. Defendant's inconsistent positions in these two fora should not be endorsed by this Court.

Finally, in the interest of adhering to the limitations on judicial authority under Article III of the United States Constitution, this Court should not cede its ability to adjudicate a plaintiff's rights under FOIA to another federal district court that has improperly retained its jurisdiction past the existence of any case or controversy.

## I. DOJ Has Failed to Comply with Its FOIA Obligations.

Under FOIA, DOJ is required to respond to FOIA requests by either producing requested records, or by specifying which FOIA exemption(s) under 5 U.S.C. § 552(b) apply. It did neither in this case.

The only grounds by which agencies may withhold information otherwise subject to FOIA are the statute's nine exemptions. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) ("These exemptions are explicitly made exclusive, and must be narrowly construed.") (internal quotes and citations omitted); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357 (D.C. Cir. 2021) ("In enacting FOIA, Congress provided that agencies may only withhold information that falls within one of the Act's nine enumerated exemptions from disclosure."); *Leopold v. Fed. Bureau of Investigation*, No. CV 22-1921 (BAH), 2025 WL 445183, at *5, 12 (D.D.C. Feb. 10, 2025) (noting same in case involving records related to FBI investigation of presidential records stored in Mar-a-Lago, and granting plaintiff's cross-motion for summary judgment). That line reflects a careful balance made by Congress. "'Congress enacted FOIA to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny to achieve greater transparency in support of open government.'" *Leopold*, 2025 WL 445183, at *5 (cleaned up) (quoting *Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1133 (D.C. Cir. 2024) (internal citations omitted)). "To find the appropriate balance between the public's interest in governmental transparency and legitimate governmental and private interests that could be harmed by release of certain types of information, Congress provided that agencies may only withhold information that falls within one of the Act's nine enumerated exemptions from disclosure, which are explicitly made exclusive and must be narrowly construed." *Leopold*, 2025 WL 445183, at *5 (cleaned up, internal quotes and citations omitted).

8

American Oversight's Complaint advances three claims against DOJ: failure to grant expedited processing, failure to conduct an adequate search for responsive records, and wrongful withholding of non-exempt records. It specifically asks the Court to order DOJ to "provide indexes justifying the withholding of any responsive records withheld under claim of exemption." Complaint, ECF No. 1 at 8–10. Yet DOJ's motion for summary judgment relies entirely on the argument that DOJ has not "improperly withheld" Volume II because the Cannon Order prohibits its release. *See* Def.'s Mot. Summ. J. at 8, ECF No. 12. But while that order prohibits DOJ from "releasing, sharing, or transmitting Volume II" or "distributing, conveying, or sharing . . . any information or conclusions in Volume II," Cannon Order at 13, it does not absolve DOJ of its obligations in *this* case to determine what, if any, *FOIA exemptions* apply and to notify American Oversight of the same.[3] *See* Cannon Order at 13; *cf. Milner*, 562 U.S. at 565 ("These exemptions are explicitly made exclusive, and must be narrowly construed.") (internal quotes and citations omitted). Whether DOJ has in fact complied with those obligations is a disputed fact, and one that is particularly material where, within a matter of weeks or even days, the Cannon Order may be dissolved, eliminating Defendant's sole justification for withholding Volume II.[4]

Likewise, assuming *arguendo* that the already-redacted version of the report might still contain stray grand jury material subject to Fed. R. Crim. P. 6(e), American Oversight seeks only

---

[3] In its order denying American Oversight's motion for preliminary injunction, this Court held that "Judge Cannon's order circumscribes DOJ's ability to produce Volume II, so DOJ's failure to release that document cannot be deemed improper." Order at 13 (Feb. 20, 2025) (cleaned up). The Court did not, at that time, consider the merits of American Oversight's claim that DOJ has failed to comply with FOIA's requirement that an agency notify a requester which, if any, of the nine FOIA exemptions apply to the requested records.

[4] To that point, if the Cannon Order is dissolved, DOJ would be obligated to process Volume II under FOIA, which may require further judicial resources were DOJ to fail to do so promptly or there were a disagreement between the parties about claimed exemptions. Dismissal of this case now would therefore not be in the interest of judicial economy.

9

the *non-exempt* portions of the report. Under FOIA, DOJ is required to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). The potential existence of grand jury material that previous prosecutors neglected to redact does not absolve DOJ of its obligation to segregate and release the remaining nonexempt portions.[5]

### II. This Court Should Not Endorse DOJ's Skirting of Its Compliance with FOIA through Its Strategically Inconsistent Positions.

DOJ has improperly sought to prevent release of Volume II by asserting inconsistent positions in related proceedings in two federal courts. Its gamesmanship should not be sanctioned, and it should instead be held to the longstanding (and subsequently reaffirmed) requirement, firmly grounded in the statute's text, that an agency may withhold requested information *only if* it falls within one of FOIA's nine enumerated exemptions. *See, e.g.*, *Tax Analysts*, 492 U.S. at 150–51 ("An agency must disclose agency records to any person under [5 U.S.C.] § 552(a) unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b).") (internal quotes omitted). *See also Smith v. U.S. Dep't of Just.*, 251 F.3d 1047, 1050–51 (D.C. Cir. 2001) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings . . . .") (internal quotes

---

[5] Finally, the fact that the Special Counsel's regulations purport to render the report "confidential," *see* 28 C.F.R. § 600.8(c), does not end the matter, *see, e.g.*, *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989) (mandatory release unless enumerated exemption applies). If DOJ had withheld the report on that basis, then proper summary judgment briefing would be before this Court on *that* question. And there may be a legal question as to whether DOJ can withhold the report pursuant to a *regulation* but not a *statute*. *See* 5 U.S.C. § 552(b)(3) (permitting agency to withhold records that are "specifically exempted from disclosure by *statute*") (emphasis added); *cf. Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) ("[FOIA] Exemption 3 is explicitly confined to material exempted from disclosure 'by statute,' and the Federal Rules of Civil Procedure simply do not satisfy this description."). But in any event, DOJ chose instead to rely entirely on Judge Cannon's order and thus forfeited that argument in this Court.

omitted). DOJ relies on a narrow exception to that rule set forth in *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375 (1980), Def.'s Mot. Summ. J. at 7–9, ECF No. 12, but the context of that case demonstrates why it should not apply where, as here, DOJ's *own actions* have contributed to its purported inability to release Volume II.

In *GTE Sylvania,* assessing whether an agency could rely on a justification *other* than FOIA's nine exemptions to withhold records, the Supreme Court first considered FOIA's purpose, noting that "Congress was largely concerned with the *unjustified* suppression of information by agency officials." 445 U.S. at 385 (emphasis added). The Court reasoned that, because the agency had agreed in the first instance to release the requested records but was later forced to withhold them pursuant to an injunction, "[t]he concerns underlying the Freedom of Information Act [were] inapplicable, for the agency . . . made no effort to avoid disclosure . . . ." *Id.* at 386.

Unlike in *GTE Sylvania*, however, here, the agency is leveraging two tribunals to avoid disclosure of critically important public records: DOJ argues before this Court that it cannot release Volume II because of Judge Cannon's injunction. *See* Def.'s Mot. Summ. J. at 9, ECF No. 12. Yet it simultaneously supports continuing to enjoin Volume II's release. *See U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. Mar. 14, 2025), ECF No. 738 at 1 (Joint Status Report). Worse, DOJ is *actively working* to prevent Volume II's release by opposing American Oversight's effort to intervene in the matter before Judge Cannon. *See U.S. v. Trump*, No. 23-cv-80101 (S.D. Fla. filed Mar. 24, 2025), ECF No. 740 (DOJ Response to Mots. Intervene). And DOJ has made no secret of its underlying motivations: in the parties' March 14 Status Report to Judge Cannon, DOJ stated that decisions about release of Volume II "outside the Department of Justice should rest with . . . the Attorney General." *U.S. v. Trump*, No. 23-cv-80101 (AMC) (S.D. Fla. Mar. 14, 2025), ECF No. 738 (Joint Status Report). In other words, DOJ wants to retain full discretion to withhold the entire

11

report with impunity, which it can do only if the Cannon Order remains in place. Absent the Cannon Order, DOJ and the Attorney General herself would have no choice but to release all non-exempt portions of Volume II, pursuant to their statutory obligations under FOIA. *See, e.g., Tax Analysts*, 492 U.S. at 150–51 (noting that FOIA mandates release unless an enumerated exemption applies).

### III. This Court Should Not Cede Its Ability to Adjudicate American Oversight's FOIA Claims.

This Court need not take direction from the Southern District of Florida, especially where that court, in extending its injunction beyond the February 11 final dismissal of the criminal cases, breached the constitutional limits on its authority. Article III of the United States Constitution limits the federal courts to adjudicating actual "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471 (1982) (quoting U.S. Const. art. III, § 2). Article III's "cases" and "controversies" requirement "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded" to "properly limit[ the] role of the courts in a democratic society." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Util. Air Regul. Grp. v. E.P.A.*, 320 F.3d 272, 277 (D.C. Cir. 2003) ("[B]efore we reach the merits of any claim, we must first assure ourselves that the dispute lies within the constitutional and prudential boundaries of our jurisdiction.") (quoting *La. Env't Action Network v. Browner*, 87 F.3d 1379, 1382 (D.C. Cir. 1996)).

After dismissal by the Eleventh Circuit on February 11, the criminal proceedings in Judge Cannon's court were concluded, and with that dismissal, both legal justification for Judge Cannon's injunction and her continued jurisdiction were eliminated. *See United States v. Trump*, 24-12311, ECF No. 113 (11th Cir. Feb. 11, 2025). DOJ confirmed this fact, stating that it does

"not intend to revive the charges brought by Special Counsel [Jack] Smith." *U.S. v. Trump*, No. 23-cv-80101 (AMC) (S.D. Fla. Mar. 14, 2025), ECF No. 738 at 2 (Joint Status Report). Not only does Judge Cannon lack jurisdiction to continue prohibiting release of Volume II, she also has no case or controversy before her where, as to Volume II's release, there is no adversity between the parties: both the former criminal defendants *and* DOJ oppose Volume II's release. *See Carney v. Adams*, 592 U.S. 53, 58 (2020) ("We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties. . . .").

Taken together, DOJ's dismissal of the appeal, statement that it does not intend to revive charges and the justification for Judge Cannon's order leave no basis for the injunction. Given the constraints that Article III places on Judge Cannon's ability to continue to enforce an injunction in defunct criminal proceedings, American Oversight's FOIA claims should be allowed to proceed. In the event Judge Cannon refuses to lift her injunction and continues to bar the public's access to records describing evidence of alleged crimes committed by President Trump and his former co-defendants (as well as the federal government's activities related to those allegations), American Oversight will seek appropriate legal recourse. In the meantime, however, this Court should deny DOJ's motion for summary judgment because a material issue of fact exists regarding whether DOJ has fulfilled its FOIA obligation to determine which, if any, statutory exemptions apply to the records American Oversight seeks.

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully asks the Court to deny Defendant's motion to dismiss, or in the alternative, motion for summary judgment.

Dated: March 28, 2025                                    Respectfully submitted,

*/s/ Elizabeth Haddix*
Elizabeth Haddix

D.C. Bar No. 90019750
Daniel Martinez
D.C. Bar No. 90025922
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5246
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*