## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> *Defendant*. | Civil Action No. 25-383 (TJK) |

### <u>MEMORANDUM OPINION</u>

Earlier this year, then-Special Counsel Jack Smith delivered to the Department of Justice a two-volume report about the investigations he conducted. Volume II, which has not been released to the public, focuses on his investigation into the presence of classified documents at Mar-a-Lago following President Trump's first term. Seeking to publicize Volume II, American Oversight submitted a Freedom of Information Act request for that report. Unsatisfied with DOJ's response, it sued and then moved for a preliminary injunction, seeking several forms of relief geared towards making DOJ process its request faster so that the public could receive the report before FBI Director Kash Patel's Senate confirmation vote. The Court denied that motion, largely because another federal judge has prohibited DOJ from disclosing Volume II.

With that status quo unchanged, DOJ now moves to dismiss American Oversight's complaint or, alternatively, for summary judgment. While American Oversight tries to wriggle around the prohibition on disclosure, it still has not overcome its basic problem: DOJ lacks discretion to release Volume II while subject to a court order prohibiting it from doing so. Of course, American Oversight can argue—and is arguing now—to Judge Aileen Cannon that she should (or must) lift her injunction. If the injunction is lifted—for whatever reason—American Oversight can make a

new FOIA request for the records.  And if it is unhappy with DOJ's response, it may sue again.

But FOIA does not require DOJ or any other agency to violate a court order, so American Over-

sight's use of it to collaterally attack another court's injunction is misguided and unavailing.  The

Court will thus construe DOJ's motion as one for summary judgment, grant it, and enter judgment

for the agency.

## I.     Background

Under the Freedom of Information Act, agencies must make records available to any per-

son whose request "reasonably describes such records" and satisfies agency procedures.  *See* 5

U.S.C. § 552(a)(3)(A).  The statute requires an agency to determine "whether to comply with such

[a] request" within twenty business days of receiving it, plus an extra ten in "unusual circum-

stances."  *Id.* § 552(a)(6)(A), (B).  If the agency decides to comply, it must make responsive, non-

exempt records "promptly available" to the requester.  *Id.* § 552(a)(6)(C)(i).

American Oversight, a nonprofit organization aiming to promote "transparency in govern-

ment," seeks to use this statutory process to obtain the report of then-Special Counsel Jack Smith's

investigations of President Trump.  ECF No. 1 ("Compl.") ¶¶ 8, 5, 10.  This January, Smith deliv-

ered his two-volume report to the Department of Justice.  *Id.* ¶ 8.  Volume I focuses on "President

Trump's potential interference with the lawful transfer of power following the 2020 election,"

while Volume II addresses the alleged "mishandling" of "classified documents after" President

Trump "left office in 2021."  *Id.*  The day after Smith handed over his report, American Oversight

submitted a FOIA request for both volumes to DOJ's Office of Information Policy.  *Id.* ¶¶ 8, 10.

And believing that the requested information was "urgently needed to inform the public" about the

investigation results, American Oversight asked for expedited processing.  ECF No. 8-1 at 9.

Within a week of that request, DOJ released Volume I to the public.  Compl. ¶ 16 & n.3.

The publication of Volume II, however, is the subject of ongoing dispute in the criminal

prosecution of Waltine Nauta and Carlos De Oliveira. *See United States v. Nauta*, No. 23-cr-80101 (AMC), 2025 WL 45873 (S.D. Fla. Jan. 7, 2025). In that case, Judge Cannon dismissed the superseding indictment against President Trump, Nauta, and De Oliveira in July 2024 after ruling that Smith's appointment as special counsel "violates the Appointments Clause of the United States Constitution." *United States v. Trump*, 740 F. Supp. 3d 1245, 1252 (S.D. Fla. 2024). With the appeal of that decision pending before the Eleventh Circuit, Nauta and De Oliveira asked Judge Cannon to enjoin DOJ from "releasing a redacted version of Volume II" for "*in camera* review by the Chairmen and Ranking Members of the House and Senate Judiciary Committees."[1] *United States v. Nauta*, No. 23-cr-80101 (AMC), 2025 WL 252641, at *1 (S.D. Fla. Jan. 21, 2025).

In late January, Judge Cannon granted that request and imposed clear limitations on what DOJ could do with the second volume. *See Nauta*, 2025 WL 252641, at *1. Specifically, she "enjoined" the Attorney General and DOJ—including all "its officers, agents, officials, and employees"—"from (a) releasing, sharing, or transmitting Volume II . . . outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department . . . any information or conclusions in Volume II." *Id.* at *6. This injunction does not automatically expire; instead, it "remains in effect pending further Court order." *Id.* After Judge Cannon issued that order, the government moved to voluntarily dismiss its appeal of the dismissal of the superseding indictment. *See United States v. Trump*, No. 24-12311 (11th Cir. Jan. 29, 2025), ECF No. 111. The Eleventh Circuit granted that motion on February 11. *See id.*, ECF No. 113.

On February 10, American Oversight sued DOJ for its handling of the FOIA request. *See*

---

[1] By that time, after the 2024 presidential election, the Eleventh Circuit had granted the government's motion to dismiss the appeal of Judge Cannon's decision as to President Trump. *See United States v. Trump*, No. 23-cr-80101 (AMC), ECF No. 677 (S.D. Fla. Nov. 26, 2024). So President Trump was no longer a defendant when Nauta and De Oliveira moved to prevent disclosure of Volume II.

*generally* Compl.  Moving for a preliminary injunction the same day, American Oversight asked the Court to "order[] DOJ to provide" a "determination" on the FOIA request, "to process the request," and to "produce non-exempt, responsive records" by February 21.  ECF No. 2 at 1.  That date was critical, according to American Oversight, because Patel's nomination for FBI Director was pending before the Senate.  *See* ECF No. 2-2 at 5.  And American Oversight argued that Volume II would "shed light on" Patel's "truthfulness, trustworthiness, and regard for protecting classified information."  *Id.* at 5, 12.  The day after American Oversight filed its motion, DOJ responded to the FOIA request.  *See* ECF No. 8-1 at 17–18.  Volume I, DOJ explained, is publicly available on its website.  *See id.* at 17.  And DOJ "determined" to withhold Volume II "in full because it is protected from disclosure by" Judge Cannon's "injunction."  *Id.*  So DOJ explained that it "lack[ed] authority to consider" Volume II's "releasability."  *Id.* (citing *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384–86 (1980)).

The Court denied American Oversight's motion on February 20.  The main problem was that the relief sought would not remedy an irreparable harm.  That harm, American Oversight argued, was tethered to the non-disclosure of Volume II before Patel's confirmation vote.  But even if the Court gave American Oversight the order it wanted, Judge Cannon's injunction barring DOJ from releasing Volume II would continue to prohibit the thing that would remedy the claimed harm: prompt disclosure of the records.  *See* ECF No. 11 at 8–10.  And American Oversight's most aggressive argument—that the Court should find that DOJ was improperly withholding Volume II and order its release—was likely a loser on the merits.  Put simply, DOJ lacked discretion to disclose Volume II because Judge Cannon ordered the agency not to do that, and her order remained binding.  *See id.* at 12–13.  And no matter how wrong American Oversight thought that order was, a FOIA proceeding in this Court was not a way to challenge it.  *See id.* at 14–15.

In proceedings before Judge Cannon, American Oversight is also trying to modify or dissolve the injunction.  Judge Cannon had directed the government and remaining defendants to "submit a status report advising of their position on" the injunction "[n]o later than thirty days after full conclusion of all appellate proceedings . . . and/or any continued proceeding in th[at] Court." *Nauta*, 2025 WL 252641, at *6.  Days after moving for preliminary relief in this Court, American Oversight filed an "Expedited Motion to Intervene and For Clarification or, Alternatively, Dissolution" of Judge Cannon's order.  *United States v. Trump*, No. 23-cr-80101 (AMC), ECF No. 717 (S.D. Fla. Feb. 14, 2025).  Because the "clear terms of th[e] Order" showed that it "remains in effect pending further Court order," Judge Cannon denied the motion to the extent it sought an emergency ruling.  *Id.*, ECF No. 718 (S.D. Fla. Feb. 18, 2025).  But she did not decide "the merits of the intervention or dissolution requests."  *Id.*  Instead, Judge Cannon consolidated American Oversight's motion with that of another would-be intervenor seeking rescission of the injunction. Both the government and the remaining defendants opposed that relief.  *Id.*, ECF Nos. 739, 740 (S.D. Fla. Mar. 14 and 24, 2025).  In doing so, the government urged the Court to "not *order* the release of Volume II." *Id.*, ECF No. 740 at 1.  And "the decision to release Volume II outside the Department of Justice should rest solely with the Attorney General"—even if Judge Cannon lifts the injunction.  *Id.*  That position generally tracked the parties' status report, in which the government told Judge Cannon that it "does not object to the Court keeping its" injunction "in place." *Id.*, ECF No. 738 at 1 (S.D. Fla. Mar. 14, 2025).

Back in this Court, DOJ moved to dismiss American Oversight's complaint (or, alternatively, for summary judgment).  *See* ECF No. 12.  American Oversight opposed that motion, arguing that it should be construed as one for summary judgment, *see* ECF No. 17 at 5, and denied.

## II.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rule 12(b)(6) motions are typically limited to the pleadings. So when "matters outside th[ose] pleadings are presented to" but "not excluded by" the Court, the motion to dismiss becomes one for summary judgment. Fed. R. Civ. P. 12(d). That conversion may happen only if "[a]ll parties" are "given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *see also U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017). But when, as here, "the defendant expressly moves for summary judgment in the alternative to a motion to dismiss before discovery has been conducted"—and "relies upon extra-pleading material" that the plaintiff has had "an opportunity to respond" to—"the Court need not issue separate prior notice of the conversion." *López Bello v. Smith*, 651 F. Supp. 3d 20, 30 (D.D.C. 2022) (citation omitted).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it could affect the outcome of the litigation under the applicable substantive law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the Court must "view the evidence in the light most favorable to the [nonmovant]"—here, American Oversight—"draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations."  *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020) (citation omitted).  But in opposing summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). So if the evidence that the nonmovant relies on is "'merely colorable' or 'not significantly probative'" such that no reasonable factfinder could rule in that party's favor based on that evidence, then "summary judgment may be granted."  *Bradley v. D.C. Pub. Schs.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016) (quoting *Anderson*, 477 U.S. at 249–50).  Thus, although at summary judgment the Court does not weigh the evidence or find the facts, the Court must decide whether the nonmovant's evidence is probative enough that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249; *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

## III.    Analysis

Before turning to the merits, the Court must decide whether to construe DOJ's motion as one to dismiss under Rule 12(b)(6) or as one for summary judgment under Rule 56.  Information about the proceedings before Judge Cannon is not beyond the pleadings for purposes of Rule 12(d). Those "facts" are "in the public record," so the Court may "evaluat[e]" them when deciding "a motion to dismiss." *Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 117 n.4 (D.D.C. 2019) (quoting *Covad Commc'ns Co. v Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (assessing a filing on another court's docket)).  The true "extra-pleading" material, then, is limited to a declaration from DOJ's Office of Information Policy counsel.  *See* ECF No. 12-1.  That declaration offers details about American Oversight's FOIA request and the

response that DOJ issued on February 11.  *See id.* ¶¶ 1–9.  For its part, American Oversight asks the Court to construe DOJ's motion "as one for summary judgment."  ECF No. 17 at 5.  And finding that American Oversight had "a reasonably opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d), the Court will do just that.

That threshold issue aside, DOJ makes the straightforward argument that it is entitled to summary judgment because Volume I of Smith's report is public and Volume II is protected from disclosure by Judge Cannon's injunction under *GTE Sylvania*.  In response, American Oversight argues that DOJ's motion falters for three reasons.  First, it argues that genuine factual disputes "remain as to whether" DOJ "is withholding any" parts of "Volume II" under FOIA's statutory exemptions that permit non-disclosure.  ECF No. 17 at 11.  Second, DOJ has allegedly made "inconsistent statements regarding disclosure of Volume II"—a sleight of hand that American Oversight urges this Court to avoid "endors[ing]."  *Id.*  Third, American Oversight continues to believe that Judge Cannon's injunction is improper.  *Id.*  If this Court were to respect that injunction, American Oversight contends, it would "cede" to Judge Cannon the "ability to adjudicate a plaintiff's rights under FOIA."  *Id.*  But none of these arguments helps American Oversight overcome its main problem: another court has prohibited DOJ from doing what American Oversight wants, and that Court has not (at least not yet) lifted that bar to disclosure.  Thus, and as explained further below, DOJ is entitled to summary judgment.

First, reiterating an argument from its preliminary-injunction briefing, American Oversight contends that DOJ needed to—but did not—"specify[] which FOIA exemption(s)" applied when responding to the FOIA request.  ECF No. 17 at 12.  Recall the gist of DOJ's response: Volume II would be "withheld in full because it is protected from disclosure by a court injunction issued by" Judge Cannon.  ECF No. 12-1 ¶ 9.  American Oversight's theory, then, is that an agency must do

more than say what records it will (or will not) produce and explain why it is withholding any of them. Instead, the agency must apparently identify statutory exemptions even when—as here—the agency refuses to disclose the records for another reason.

For good reason, no authority cited by American Oversight or found by this Court supports that understanding of FOIA. No one disputes the general rule: "In enacting FOIA, Congress provided that agencies *may* only withhold information that falls within one of the Act's nine enumerated exemptions from disclosure." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (emphasis added). But the Supreme Court's *GTE Sylvania* decision created "a slight departure . . . from FOIA's self-contained exemption scheme." *Sikes v. U.S. Dep't of the Navy*, 896 F.3d 1227, 1235 (11th Cir. 2018) (internal quotation marks and brackets omitted) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 155 (1989)). That departure recognizes that an agency "simply [has] no discretion" to "exercise" when "a court has enjoined" it from "disclos[ing]" a record. *Jud. Watch, Inc. v. DOJ*, 813 F.3d 380, 383 (D.C. Cir. 2016) (quoting *GTE Sylvania*, 445 U.S. at 386). In other words, the *GTE Sylvania* exception is for situations where the agency is an "enjoined party" and has "lost the discretion" to disclose the records, whether or not the enumerated statutory exemptions apply. *Alley v. HHS*, 590 F.3d 1195, 1203 (11th Cir. 2009) (citation omitted); *see also, e.g.*, *Nat'l Res. Def. Council v. Leavitt*, No. 04-cv-1295 (HHK), 2006 WL 667327, at *5 (D.D.C. Mar. 14, 2006) (explaining that the "danger targeted by FOIA . . . is not implicated because the agency has not *chosen* to withhold information" but rather "has been instructed to do so"). And while limited, that exception is necessary to avoid placing "contradictory legal commands" on agencies: "either violate FOIA or commit contempt of court." *Sikes*, 896 F.3d at 1235.

This carveout, though not tethered to the specified exemptions, still has statutory roots.

FOIA authorizes courts to compel production of records when an agency has "(1) improperly (2) withheld (3) agency records." *GTE Sylvania*, 445 U.S. at 384 (describing 5 U.S.C. § 552(a)(4)(B)). But when an agency complies with a court order barring disclosure, it has not *improperly* withheld anything. *See id.* at 384–87. Even American Oversight—after leading with an argument that proceeds as though *GTE Sylvania* does not exist—eventually acknowledges this well-established exception. *Compare* ECF No. 17 at 12 ("The only grounds by which agencies may withhold information otherwise subject to FOIA are the statute's nine exemptions."), *with id.* at 15 (recognizing the "exception to that rule set forth in *GTE Sylvania*").

Given this settled rule, an agency does not flout its FOIA obligations by pointing to that exception rather than listing exemptions under § 552(b) that are irrelevant when a court has removed the agency's discretion to release records. Section 552(a)(6)(A)(i) requires agencies to "determine" within 20 days "whether to comply with" a proper FOIA request and to provide the "reasons" for its "determination." That directive, translated to concrete tasks, tells the agency to "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Wash. v. FEC* (*CREW*), 711 F.3d 180, 188 (D.C. Cir. 2013).[2]

True, those "reasons for withholding" are often tied to the enumerated statutory exemptions under § 552(b). But nothing about the statutory requirement of providing the "reasons" for a determination suggests that DOJ needed to do anything more than what it did here: tell American

---

[2] The "penalty" for not complying with these requirements is just "that the agency cannot rely on the administrative exhaustion requirement to keep" the "case[] from getting into court." *CREW*, 711 F.3d at 189. DOJ has not invoked exhaustion but has litigated this case on the merits, so it is unclear what relief American Oversight would be entitled to for this alleged FOIA violation.

Oversight what records it would produce (as far as Volume II goes, none) and why it would not produce them (because another court told the agency not to). To repeat, what matters is whether the agency "communicate[s] . . . the *reasons* for withholding any documents," *Khine v. DHS*, 943 F.3d 959, 967 (D.C. Cir. 2019) (emphasis added) (citation omitted), not whether it identifies § 552(b) exemptions that are not implicated when the *GTE Sylvania* exception applies. Thus, for example, an agency satisfies the determination requirement when it tells the requester "the scope of the documents it intend[s] to produce—none—and the reason therefor—[it] could not locate responsive documents"—even though that reason is not one of the nine listed exemptions in § 552(b). *Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 12 (D.D.C. 2019) (citation omitted). Just because agencies are more likely to invoke those exemptions than they are *GTE Sylvania* does not mean that the latter is inadequate. Rather, this scenario reflects how rare it is for a party to request records under FOIA when a different court has ordered the agency not to disclose them.[3] In sum, DOJ's failure to specify statutory exemptions that it did not rely on when withholding records is no basis for a FOIA claim.

Second, American Oversight says that DOJ has taken "strategically inconsistent positions" about Volume II—and that granting DOJ's motion would "endorse" that conduct. ECF No. 17 at 14. DOJ, in other words, impermissibly wants to have it both ways—by arguing to this Court that Judge Cannon's injunction bars disclosure while arguing before her that she should keep the order in place. *See id.* at 15. And DOJ's "underlying motivations" are apparently clear: it "wants to retain full discretion to withhold the entire report with impunity, which" is why it supports the injunction. *Id.* at 15–16. Add all that together, American Oversight insists, and the result is that

_____

[3] American Oversight was, of course, within its rights to bring this suit despite Judge Cannon's injunction. But its decision to do so before even asking for relief from Judge Cannon makes its concerns about "judicial economy" ring hollow. ECF No. 17 at 13 n.4.

this case—unlike *GTE Sylvania*—involves the "*unjustified* suppression of information." *Id.* at 15 (quoting *GTE Sylvania*, 445 U.S. at 385). Not so.

For one thing, American Oversight is wrong to say that the "only" way for the agency to "retain full discretion to withhold the entire report" is if Judge Cannon maintains the injunction. ECF No. 17 at 15–16. Her order *removes* discretion from DOJ by prohibiting it from "releasing, sharing, or transmitting Volume II" or, more broadly, from "otherwise releasing, distributing, conveying, or sharing . . . any information or conclusions in Volume II." *Nauta*, 2025 WL 252641, at \*6. And in this way, the injunction is the paradigm of the *GTE Sylvania* exception because it is "a court order" that eliminates DOJ's "discretion" by "specifically enjoining the[] release" of the records that American Oversight seeks. *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 335 (D.D.C. 2015).

For another, even assuming it matters, American Oversight overstates the tension between DOJ's positions in each court. DOJ is consistent on the key issue for this FOIA case: it lacks discretion to disclose Volume II because of Judge Cannon's order. That has been DOJ's stance throughout this litigation. *See* ECF No. 8 at 12–13; ECF No. 12 at 11–13; ECF No. 17 at 1. And DOJ recognizes in the proceedings before Judge Cannon that her order currently "enjoin[s]" it "from releasing Volume II." *Trump*, No. 23-cr-80101 (AMC), ECF No. 738 at 1 (S.D. Fla. Mar. 14, 2025). True, DOJ does not object to maintaining that status quo. *See id.* And *if* Judge Cannon lifts the injunction, the agency would prefer that the Attorney General possess discretion to make decisions about releasing Volume II. *See id.* at 2. But those positions are hardly inconsistent with DOJ's argument before this Court—*i.e.*, that the agency *currently* lacks discretion to disclose Volume II under FOIA. Consider a restaurant that tells customers it cannot serve them after 9:00 p.m. because the mayor has imposed a curfew. Such a position is not "inconsistent" with the restaurant

owner telling the mayor that she is fine with the curfew remaining in place. Here, DOJ's views on whether Judge Cannon should maintain the injunction and what should happen if she lifts it do not speak to the issues before this Court about whether the agency has violated FOIA. Instead, DOJ has understandably—and appropriately—taken a limited position in this Court about FOIA disclosure while explaining to Judge Cannon what the agency believes she should do.

More to the point, this case fits within the *GTE Sylvania* exception despite American Oversight's insistence that DOJ's conduct renders it inapplicable. That exception turns on whether the agency from which a FOIA plaintiff seeks records has "discretion" to release them. *GTE Sylvania*, 445 U.S. at 386. When an injunction removes that discretion, "it is not the [agency's] decision to withhold the documents at all." *Id.* That is the "distinctly different context" in which the agency does not violate FOIA by refusing to disclose documents that a court has said it may not release. *Id.* And this case fits that context hand in glove. Indeed, American Oversight never says that DOJ has discretion to violate Judge Cannon's order. Nor could it.

Rather, American Oversight faults DOJ for not trying to persuade Judge Cannon to lift the injunction. But *that* kind of discretion—whether to make a particular argument in separate litigation—is not the discretion that matters under *GTE Sylvania*. DOJ, after all, would still lack discretion to release the documents even if the agency took American Oversight's preferred position before Judge Cannon. Put differently, "[e]ven if [DOJ] disagreed with" Judge Cannon's "imposition of the[] order[]," the agency would remain "subject to an injunctive order issued by a court with jurisdiction" and thus would be "expected to obey that decree until it is modified or reversed." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 656 (2d Cir. 2004) (quoting *GTE Sylvania*, 445 U.S. at 386). And that obligation would persist "even if [DOJ] ha[d] proper grounds to object to the order." *Id.* (quoting *GTE Sylvania*, 445 U.S.

at 386).  In the end, American Oversight's qualms with DOJ's litigating positions are no basis for finding that the agency has violated FOIA.

Third, American Oversight again frames the pertinent issue incorrectly by arguing that the Court will improperly "cede its ability to adjudicate . . . FOIA claims" if it grants DOJ's motion. ECF No. 17 at 16.  But adjudicating American Oversight's FOIA claims is what this Court is doing by resolving the motion and entering judgment in its favor.  FOIA is meant "to correct improper denials of requests for public information by various federal *agencies*, not by courts."  *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) (emphasis added).  Tracking the statute, the Court has assessed whether the agency—DOJ—incorrectly withheld records from American Oversight, not whether a different court should modify its injunction.  And the Court has found that DOJ did not incorrectly withhold Volume II, which is subject to a non-disclosure injunction and thus triggers the long-recognized *GTE Sylvania* exception.  American Oversight may disagree with how the Court adjudicated its FOIA claims.  But that disagreement does not mean that the Court refused to adjudicate them.  Nor, for that matter, does it show that the Court improperly took "direction from" Judge Cannon by declining to hold that DOJ's compliance with her order amounts to a FOIA violation.  ECF No. 17 at 16.

American Oversight's unyielding focus on Judge Cannon's alleged mistakes in the criminal case before her underscores why FOIA litigation in this Court is not a way to correct those purported errors.  If American Oversight "believe[s]" that Judge Cannon's "[i]njunction [is] improper," it should try to "challenge[] it in" the Southern District of Florida—just as it is doing now. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (citation omitted).  But "[i]t is for the court of first instance"—that is, Judge Cannon—rather than this Court "to determine the question of the validity of" the injunction.  *Id.*  And "until [her] decision is reversed for error by orderly review,

either by" herself "or by a *higher* court," the "order[]" is "to be respected." *Id.* (emphasis added) (citation omitted) (directing respondents to challenge a bankruptcy court's injunction "in the Bankruptcy Court," and then to "appeal" *that* decision if "dissatisfied" with the ruling). This bedrock principle explains why "the Supreme Court did not express any opinion on the soundness of the underlying injunction in *GTE Sylvania*." *Alley*, 590 F.3d at 1203. It just didn't "matter" then— and doesn't matter now—whether "the injunction prohibiting disclosure was unsound, unwise, or otherwise in need of being modified or vacated." *Id.* Those issues, of course, *would* matter in a "proceeding to modify or vacate an injunction." *Id.* But because "a FOIA case" is "not" such a "proceeding," a "FOIA lawsuit" is an impermissible "collateral[] attack[]" on an "injunction issued by" a different court "against the disclosure of information." *Id.* (describing this "principle" as "[p]art and parcel of the *GTE Sylvania* decision"). Instead, American Oversight's path to Volume II requires first that Judge Cannon lift the injunction. If that happens, American Oversight may request the records under FOIA again. And if dissatisfied with DOJ's response, it may file another FOIA suit.

American Oversight suggests that this case is different because Judge Cannon "has no case or controversy before her." ECF No. 17 at 17. In doing so, American Oversight might be invoking language in *GTE Sylvania* noting that there was "no doubt" that the federal district court "had jurisdiction" to issue the injunction at issue, and that the injunction there did not have "only a frivolous pretense to validity." *GTE Sylvania*, 445 U.S. at 386 (citation omitted). American Oversight appears to argue that Judge Cannon no longer has jurisdiction to maintain the injunction over criminal proceedings that are purportedly "defunct" given the Eleventh Circuit's dismissal of the government's appeal and DOJ's statement that it does "not intend to revive the charges" against the defendants. *See* ECF No. 17 at 16–17 (citation omitted). So, it contends, this Court should

declare that she lacks authority to continue prohibiting disclosure and tell DOJ that her order imposes no obstacle to disclosing Volume II—even though neither Judge Cannon nor a court with the power to review her decisions has said that.

The above-cited language in *GTE Sylvania* does not authorize this Court to undertake the kind of roving jurisdictional inquiry into the matters before Judge Cannon that American Oversight would like. To begin, even American Oversight does not contest that Judge Cannon "*had* jurisdiction to issue" the "injunction[]" when she did in January. *GTE Sylvania*, 445 U.S. at 386 (emphasis added). The appeal of her order dismissing the indictment was still live then, so "this is not a case where the injunction was transparently invalid"—for jurisdictional or other reasons—when Judge Cannon entered it. *Walker v. City of Birmingham*, 388 U.S. 307, 315 (1967) (explaining that the "court that issued the injunction *had* . . . jurisdiction" (emphasis added)).

Beyond that, the Court has no reason to doubt Judge Cannon's authority to decide whether and to what extent the injunction should remain in place. Federal courts may "consider collateral issues after an action is no longer pending," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), and "employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice," *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985). "[A] court" that "enters an injunction," moreover, "retains jurisdiction to enforce its order in the future." *Inmates' Councilmatic Voice v. Wilkinson*, 989 F.2d 499, 1993 WL 87431, at *3 (6th Cir. 1993) (Table) ("[A] district court can terminate supervision of a lawsuit without vacating injunctive orders previously entered in the suit."). And a federal court's "subject matter jurisdiction over a criminal case does not necessarily end at the close of the proceedings"—*i.e.*, "upon the dismissal of an indictment." *In re Stabile*, 436 F. Supp. 2d 406, 412 (E.D.N.Y. 2006); *cf. id.* at 413 (discussing how federal courts have "long exercised ancillary jurisdiction in criminal matters"

to, among other things, "return seized property" (citation omitted)); *United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) ("[D]istrict courts retain some reservoir of jurisdiction—distinct from the rules of criminal procedure themselves—to entertain motions after final judgment."). Against that backdrop, Judge Cannon has before her the question of how the current posture of the criminal case and the facts affect the injunction she entered.[4]  The Court sees no reason—described in *GTE Sylvania* or otherwise—to short-circuit the process unfolding before Judge Cannon.  In the end, American Oversight cites no case in which a FOIA court probed the jurisdiction of another court as it suggests here.

Indeed, if *GTE Sylvania* mandated that move, it would risk imposing the problem that it seeks to avoid: "requir[ing] an agency to commit contempt of court in order to" comply with FOIA. *GTE Sylvania*, 445 U.S. at 387.  A decision by this Court about Judge Cannon's jurisdiction would not bind her as a matter of precedent.  Nor would the doctrine of issue preclusion prevent relitigation of that jurisdictional point.  "[F]undamental" in "nature," the "general rule" is "that a litigant is not bound by a judgment to which she was not a party." *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008).  And this Court sees no reason why its decision in a FOIA case about Judge Cannon's jurisdiction would stop Nauta and De Oliveira—neither of whom is a party here—from arguing the opposite.  Judge Cannon, then, could disagree on this jurisdictional issue and find that her injunction still prohibits DOJ from disclosing Volume II.

American Oversight is no doubt frustrated that Judge Cannon has barred DOJ from

---

[4] Nauta and De Oliveira, for example, contend that "jeopardy arguably remains for all three former co-defendants." *Trump*, No. 23-cr-80101 (AMC), ECF No. 738 at 5–6 (S.D. Fla. Mar. 14, 2025).  And just because DOJ says that it "does not intend to revive the charges" "[a]t this juncture," *see id.* at 2, does not mean that it never will.  So the concerns about how the "public dissemination of Volume II" could harm the defendants' rights have not necessarily disappeared. *Nauta*, 2025 WL 252641, at *5 (explaining basis for prohibiting such disclosure).

releasing Volume II.  But FOIA litigation is not a way to challenge that decision.  The statute provides remedies for when agencies improperly hold records, not when they comply with allegedly mistaken court orders.

**IV.    Conclusion**

For all the above reasons, the Court will construe Defendant's motion as one for summary judgment and will grant it.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 22, 2025

18